Brian HAMMONS, Guardian of the Estate of Francis Ralph Eisert, a/k/a Ralph Francis Eisert, Plaintiff–Respondent,

v.

Eugene EISERT, et al., Defendant–Appellant.

Vernon B. TYLER, Plaintiff–Respondent,

v.

Eugene EISERT, et al., Defendant–Appellant.

Nos. 15069, 15070.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 9, 1988.

Robert L. Payne, P.C., Cassville, for defendant-appellant.

Joseph B. Phillips, Stockton, for plaintiff-respondent.

FLANIGAN, Judge.

On July 20, 1977, Nina Bowles, using her own money, purchased two certificates of deposit at a savings and loan institution in Springfield. One certificate, in the amount of $11,700, was payable to "Nina Bowles, Trustee for Francis Ralph Eisert." The other certificate, also in the amount of $11,700, was payable to "Nina Bowles and Eugene Eisert, Co-trustees for Vernon E. Tyler." This opinion will refer to the foregoing persons by their respective first names.

On May 12, 1980, Nina, then 90, and Eugene pledged the two certificates as security for two loans, one in the amount of $10,530 and the other in the amount of $10,500. Later the security was used to pay the loans and Eugene received the balance of the security. Checks representing the loans were delivered to Nina and Eugene. One check was payable to Nina and Eugene as co-trustees for Vernon, and the other check was payable to Nina as trustee for Francis.

On May 13, 1980, Nina and Eugene cashed both of the checks. With that cash they purchased a Chevrolet for $5,200.

The balance of the money, $15,830, was applied by Eugene to the payment of a debt owed by Eugene to a bank in Greenfield. On March 1, 1981, Nina died. On April 6, 1981, a guardian was appointed for Francis, an incompetent person.

In December 1981 Francis, through his guardian, filed an action against several defendants, including Eugene. In October 1982 Vernon filed an action against several defendants, including Eugene. The petitions in both of the actions alleged that Eugene exercised undue influence over Nina throughout the foregoing transactions. Vernon claimed that Eugene's undue influence over Nina caused Nina to revoke Vernon's trust. Francis claimed that Eugene's undue influence over Nina caused Nina to revoke Francis's trust. Both petitions alleged that the trust funds were diverted by Eugene to his own use. Both petitions sought actual and punitive damages. Vernon and Francis were represented by the same counsel.

On motion of the plaintiffs, the cases were consolidated and tried to a jury. In Francis's case the jury found in favor of Francis and against Eugene and awarded Francis actual damages. The jury awarded Vernon $5,000 in punitive damages against Eugene, as well as actual damages. The details of the verdicts are set forth later in this opinion.

In Francis's case the trial court entered judgment in favor of Francis's guardian and against Eugene in the sum of $12,804.13. In Vernon's case the trial court entered judgment in favor of Vernon and against Eugene in the sum of $22,649.61 for actual damages and $5,000 for punitive damages, for a total amount of $27,649.61. Eugene appeals from the two judgments, and his two appeals were consolidated in this court.

In general, Eugene contends that the respective petitions failed to state a claim upon which relief can be granted against Eugene, that Francis and Vernon failed to make a submissible case against Eugene,

that the cases were improperly consolidated for trial, that Eugene was entitled to a mistrial due to improper argument by plaintiffs' counsel, and that neither plaintiff was entitled to the award of "pre-judgment interest" contained in the verdicts and judgments.

On this appeal this court confines its review to the "points relied on." Rule 84.04(d).[1] *Kurtz v. Fischer*, 600 S.W.2d 642, 645[1] (Mo.App.1980). "The questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned on appeal and no longer an issue in the case." *Pruellage v. De Seaton Corporation*, 380 S.W.2d 403, 405[3] (Mo.1964). See also *Smith v. Welch*, 611 S.W.2d 398, 399[1] (Mo.App.1981). Matters which could have been raised, but were not, are neither mentioned nor considered. This opinion should be so viewed.

Eugene's first point reads:

"The court erred in submitting these cases to the jury on the ground that plaintiffs' petitions fail to state a cause of action recognized by the courts of this state and to grant appellant's motion for summary judgment, in that the evidence showed as a matter of law that a revocable 'Totten' trust was created by Nina Bowles and that she unilaterally revoked, thus plaintiffs are without standing to recover under the facts as were alleged in the pleadings."

Portions of Eugene's first point appear to claim that the petitions are defective and that the court should have sustained his motion for summary judgment. Those portions have not been preserved for appellate review for the reason that the statement of facts section of Eugene's brief makes no mention of the contents of Vernon's petition or Francis's petition, nor does it mention the contents of Eugene's motion for summary judgment. Rule 84.04(c). The legal file does not contain Eugene's motion

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

for summary judgment, contrary to Rule 81.12(a).

As this court understands Eugene's first point, it is that Nina, in obtaining issuance of the two certificates of deposit on July 20, 1977, created two separate revocable trusts which she "unilaterally revoked," and that plaintiffs may not complain of her act in so doing. Eugene's theory seems to be that Nina exercised her power to revoke the trusts by pledging the two certificates of deposit on May 12, 1980, and that she had a right to do so. Eugene relies primarily on *First Nat. Bank of Mexico v. Munns,* 602 S.W.2d 910 (Mo.App.1980), where a grantor established a revocable trust in a savings account in a bank and later pledged the trust certificate of deposit as security for a loan. The court held that the grantor's actions revoked the trust to the extent necessary to secure the loan and that upon the grantor's default in the payment of the loan the lender was entitled to the funds held in the account, despite the claims of the trust beneficiaries.

Eugene concedes, at least tacitly, that if the two trusts had not been revoked by Nina during her lifetime, Vernon and Francis would have been entitled to the respective trust funds. See § 369.179.

Neither Eugene's first point nor his argument in support of it mentions the fact that both petitions allege that Nina's conduct in pledging the two certificates of deposit was the product of undue influence exercised by Eugene. The two plaintiffs introduced substantial evidence on the issue of Eugene's undue influence, but Eugene's brief makes no mention of that evidence. Much of the evidence concerning that issue came from Eugene himself, whom the plaintiffs called as an adverse witness.

Eugene argues, and plaintiffs tacitly agree, that Nina's procurement of the two certificates of deposit on July 20, 1977, constituted the creation by her, as settlor, of two *revocable* trusts, with Francis and Vernon as the respective beneficiaries. Neither party has cited any authority on the question of whether a beneficiary of a revocable trust has a claim for relief, at least after the death of the settlor, against a third person who, by undue influence, induces the settlor to revoke the trust and diverts all or part of the trust funds to his own purpose. There seems to be no direct Missouri authority on the issue.

Missouri recognizes a cause of action for tortious interference with business relations. *Fischer, Etc. v. Forrest T. Jones & Co.,* 586 S.W.2d 310, 315 (Mo. banc 1979); *Minn. Mining & Mfg. Co. v. Williamson,* 675 S.W.2d 951, 953[1] (Mo.App.1984). Missouri has long recognized that the exercise of undue influence may result in the invalidity, or at least avoidability, of the transfer of a note, *Crowe v. Peters,* 63 Mo. 429 (1876); the assignment of a contract, *Metropolitan Paving Co. v. Brown–Crummer Inv. Co.,* 309 Mo. 638, 274 S.W. 815 (1925); the execution of a will, *Maurath v. Sickles,* 586 S.W.2d 723 (Mo.App.1979), a deed, *Been v. Jolly,* 247 S.W.2d 840 (Mo. 1952), a mortgage, *Bell v. Campbell,* 123 Mo. 1, 25 S.W. 359, 45 Am.St.Rep. 505 (1894), or a trust instrument, *Creek v. Union Nat. Bank in Kansas City,* 266 S.W.2d 737 (Mo.1954); and the making of a gift, *Michaelson v. Wolf,* 364 Mo. 356, 261 S.W. 2d 918 (Mo.1953), or a guaranty, *Tandy v. Elmore–Cooper Live Stock Commission Co.,* 113 Mo.App. 409, 87 S.W. 614 (1905). "Undue influence," at least as used in a will contest, means such influence as destroys the free choice of the person making the will. MAI 15.03.

Substantial out-state authority recognizes the cause of action of tortious interference with non-business forms of advantageous economic relations. In *Mitchell v. Langley,* 123 Ga. 827, 85 S.E. 1050 (1915), the owner of a benefit certificate named Langley as beneficiary. The owner had the right to change the beneficiary. Mitchell fraudulently induced the owner to change the beneficiary and to appoint Mitchell as the new beneficiary of the fund, which was payable on the death of the owner. The owner died after the change was made, and Mitchell collected the amount due under the amended certificate. Upholding Langley's claim against Mitchell, the court said that although Langley

had no vested interest in the certificate, this did not prevent Langley from proceeding in equity to have a trust declared in her favor if the benefit which would have accrued to her was diverted from her and the fund went into the possession of Mitchell by means of fraud.

At p. 1053 the court said:

"Would not a man have the right to receive gifts or insurance or the like, if they were in process of being perfected, and would have come to him but for malicious and fraudulent interference? A bare possibility may not be within the reason for this position. But where an intending donor, or testator, or member of a benefit society, has actually taken steps toward perfecting the gift, or devise, or benefit, so that if let alone the right of the donee, devisee, or beneficiary will cease to be inchoate and become perfect, we are of the opinion that there is such a status that an action will lie, if it is maliciously and fraudulently destroyed, and the benefit diverted to the person so acting, thus occasioning loss to the person who would have received it."

Section 774B of the Restatement of Torts 2d recognizes a cause of action for intentional interference with an inheritance or gift. That section reads: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."

In addition to *Mitchell v. Langley*, supra, out-state cases recognizing the cause of action of tortious interference with a gift or inheritance include the following: *Davison v. Feuerherd*, 391 So.2d 799 (Fla.App. 1980); *Nemeth v. Banhalmi*, 99 Ill.App.3d 493, 55 Ill.Dec. 14, 17, 425 N.E.2d 1187, 1190[1] (Ill.App.1981); *Frohwein v. Haesemeyer*, 264 N.W.2d 792, 795[2] (Iowa 1978); *Cyr v. Cote*, 396 A.2d 1013, 1018[11] (Me.1979); *King v. Acker*, 725 S.W.2d 750, 754[5] (Tex.App.1987); *DeWitt v. Duce*, 599 F.2d 676 (5th Cir.1979). See also *Holt v. First Nat. Bank of Mobile*, 418 So.2d 77, 79[2] (Ala.1982).

Scholarly treatment of the general subject may be found in the following authorities: Prosser & Keeton on Torts (5th Ed.) § 130, p. 1007; Laws of Torts, Harper, James and Gray (2d Ed.) Vol. 2, § 6.11, p. 345; 22 A.L.R.4th, 1229 (Liability in Damages for Interference with Expected Inheritance or Gift); 19 U.K.C.Law Rev. 78 (1950) (Tort Liability for Interference with Testamentary Expectancies in Decedents' Estates).

In *Cyr v. Cote*, supra, at 1019, footnote 7, the court said:

"In recognizing this tort, we emphasize that it is one for the wrongful interference with an intended bequest and not an independent action for undue influence or duress. Rather, undue influence and duress, traditionally considered wrongful under well-established precedent ... are simply the means by which the alleged interference occurred." (Citing authorities.)

In *Nemeth v. Banhalmi*, supra, 55 Ill. Dec. at 18, 425 N.E.2d at 1191, the court pointed out that the interference must be "conduct tortious in itself, such as fraud, duress or undue influence."

In *Davison v. Feuerherd*, supra, the doctrine of tortious interference with an expected gift or inheritance was applied in favor of the beneficiary of a revocable trust where the defendants, through undue influence, induced the settlor to revoke the trust. The court said, at p. 802:

"[W]ith regard to tortious interference claims, no real distinction exists between gifts of inheritance through a will and gifts through a revocable trust. Both forms of giving create only an expectancy in the beneficiary and, in both forms, the donor has the privilege of changing his mind. The rationale of the court in Mitchell v. Langley is applicable to and derived from cases dealing with wills, and yet the situation in that case involved a benefit certificate. It is the expectancy status to which this theory of liability applies, and both wills and revocable trusts create expectancies."

At p. 801, the court quoted with approval the following statement of Dean Prosser:

"There is no essential reason for refusing to protect such non-commercial expectancies, at least where there is a strong probability that they would have been realized. * * * The problem appears in reality to be one of satisfactory proof that the loss has been suffered, instead of the existence of a ground of tort liability."

Eugene's position is, simply, that the two trusts created by Nina on July 20, 1977, were revocable and she revoked them, thus depriving plaintiffs of their standing to sue. This position does not address the fact that the petitions alleged that the revocation was the result of Eugene's undue influence and that the plaintiffs introduced substantial evidence in support of those allegations. Eugene makes no mention of the foregoing authorities which support plaintiffs' cause of action.

■ This court holds that the beneficiary of a revocable written trust has a cause of action, at least after the death of the settlor, against a person who, by the exercise of undue influence induces a settlor to revoke the trust and thereby diverts all or part of the trust funds and prevents the beneficiary from receiving that which he would otherwise have received. The additional fact that Eugene was a co-trustee with Nina in Vernon's trust does not, of course, excuse Eugene's conduct with respect to that trust, but indeed demonstrates that he violated a fiduciary duty as well. Eugene's first point has no merit.

■ Eugene's second point is that the trial court erred in "consolidating the two causes for trial" because the consolidation "allowed the jury to hear evidence of two alleged 'bad acts' instead of hearing each case on its own evidentiary merits." Eugene cites no authority in support of his second point other than Rule 66.01(b) which, in pertinent part, reads: "When civil actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the civil actions; it may order all the civil actions consolidated; . . ."

Although the two actions had different plaintiffs, they had the same defendants. Each action involved the events of July 20, 1977, and May 12 and 13, 1980, described in the first three paragraphs of this opinion. It is clear that the two actions involved common questions of law and common questions of fact. The two actions were consolidated for trial on the motion of the plaintiffs. Where, as here, the requirements of Rule 66.01(b) have been met, a determination of such a motion requires the exercise of a sound judicial discretion on the part of the trial court. *State ex rel. Rosen v. McLaughlin*, 318 S.W.2d 181, 184[2] (Mo. banc 1958); *State ex rel. Allen v. Yeaman*, 440 S.W.2d 138, 145[5] (Mo. App.1969). This court holds that the trial court did not abuse its discretion in holding a joint trial of the two actions. Eugene's second point has no merit.

■ Eugene's third point is that the trial court erred in failing to declare a mistrial when one of plaintiffs' attorneys made an allegedly improper statement during his final argument to the jury. During the course of the trial Eugene, called as an adverse witness by the plaintiffs, was interrogated by plaintiffs' counsel concerning his financial condition. When Eugene refused to answer, his counsel requested a recess and a recess was taken. When the court reconvened, Eugene answered the questions.

Referring to Eugene, plaintiffs' counsel, during the course of his final argument, said:

"You saw what kind of person, how free and open he was. We had to take a break, and it was explained to him—his attorneys say that he had to be open and he should be—well, his lawyer, I know what they told him back there; they told him if he didn't answer those questions and I was asking the Judge to instruct him to answer—he kept—and, the Judge instructed him to answer, and he kept refusing to answer, he would have went to jail for contempt of this Court. That's why he answered those questions; not because he wanted to be free and open."

At that point an attorney for another defendant made an objection and the objection was sustained. Eugene's counsel made no objection, nor did he join in the objection which was made. No request for a mistrial was made by any counsel.

In his argument to this court on this appeal, Eugene's counsel did not question the accuracy of the statement that the witness would go to jail for contempt of court if he persisted in his refusal to answer. Counsel's complaint is that there was no factual predicate for the argument, that is, there was no showing that Eugene's counsel gave such advice to Eugene.

A request for a mistrial based on allegedly improper final argument comes too late where, as here, it appears initially in a motion for new trial. *Halley v. Schopp,* 400 S.W.2d 123, 126[5, 6] (Mo.1966). Eugene's third point has not been preserved for appellate review. This court holds that the challenged argument does not constitute plain error. Rule 84.13(c). See *Underwood v. Crosby,* 447 S.W.2d 566, 570[10] (Mo. banc 1969). Eugene's third point has no merit.

Eugene's fourth point is that the trial court erred in including in the judgments in favor of the respective plaintiffs "interest at the rate of 12% compounded quarterly from March 1, 1981, after the jury returned such a verdict where there was no evidence or jury instruction authorizing such a finding." Both petitions demanded interest, and Eugene has not challenged the sufficiency of those demands. The two verdicts awarded actual damages in certain principal amounts, which Eugene does not contest.[2] Those verdicts purported to award 12% interest "compounded quarterly from March 1, 1981, until paid." March 1, 1981, was the date of Nina's death. At the time the verdicts were received, Eugene's counsel made no objection to their contents.

The statement of facts section of Eugene's brief makes no mention of interest

except for stating the contents of the two verdicts. That section does not mention evidence concerning interest or instructions concerning interest. The record on appeal does not contain any of the instructions.

The events set forth in the first three paragraphs of this opinion, coupled with evidence of Eugene's undue influence, entitled each plaintiff to an award of prejudgment interest. In *Cannon v. Bingman,* 383 S.W.2d 169, 174 (Mo.App.1964), this court said:

> "[I]f money is wrongfully or fraudulently obtained or withheld the law raises an artificial implied promise to pay interest from the date the money is wrongfully obtained. It is also held that where a wrongful act is involved, interest is recoverable as a part of the damages."

Section 408.020 "permits interest on liquidated claims arising by operation of law as well as upon contract." *Coleman v. Kansas City,* 182 S.W.2d 74, 78[11] (Mo. banc 1944). The general rule is that in actions of trover, or actions in the nature of trover, for the conversion of property, interest or the equivalent of interest on the value of the property converted may be recovered. *Independence Flying Service, Inc. v. Ailshire,* 409 S.W.2d 628, 632[7] (Mo.1966). The rate of interest allowable is that prescribed by § 408.020. Id. See also *Southern Missouri Bank v. Fogle,* 738 S.W.2d 153, 158[9] (Mo.App.1987). Although usually, in conversion actions, interest is allowed on the value of the property from the date of its conversion, plaintiffs, by not appealing, make no complaint that interest should run from the date of defendant's wrongful acts as distinguished from the date of Nina's death. Nina had the right to make a valid revocation, and plaintiffs had no right to the trust funds until she died.

In *Doerflinger Realty Company v. Fields,* 281 S.W.2d 609 (Mo.App.1955), the

**2.** The jury awarded Vernon $11,700 in actual damages plus the challenged interest, as well as punitive damages. $11,700 was the amount of each certificate of deposit obtained by Nina on July 20, 1977. Each certificate bore interest at 7¾% per annum. The jury awarded Francis $6,500 in actual damages which, perhaps, was based on the difference between the amount of the certificate naming him as beneficiary and $5,200, the purchase price of the Chevrolet purchased on May 13, 1980.

jury verdict awarded interest but did not compute the amount. The court held that the trial court should have refused to accept the verdict as returned, but that no reversal was required. The court pointed out that the amount of interest is a "mere mathematical calculation" and the court of appeals modified the judgment to reflect the correct amount of interest.

In *Campbell v. Kelley*, 719 S.W.2d 769 (Mo. banc 1986), the only issue before the jury was whether the agreement in question was a promissory note. The jury resolved that issue in favor of the plaintiff but made no award of damages. The court held that since the jury found the agreement was a note, plaintiffs were entitled to principal and interest and that the court could perform the necessary calculations and enter judgment accordingly.

■ Although the instant verdicts seek to award 12% interest compounded quarterly from March 1, 1981 until paid, the allowable rate of interest is 9% per annum. § 408.020. The provision with respect to quarterly compounding was also improper. *Nika Corp. v. City of Kansas City, Mo.*, 582 F.Supp. 343, 367[31] (W.D.Mo.1983).

In a jury case the judgment "shall be entered as of the date of the verdict." Rule 78.04. The instant verdicts were returned on October 7, 1986. Each plaintiff was entitled to interest on their respective actual damages awards, set forth in footnote 2, from March 1, 1981 until October 7, 1986. Accordingly, based upon the verdicts, Vernon was entitled to actual damages in the amount of $17,596.80, and $5,000 punitive damages for a total judgment of $22,596.80, and Francis was entitled to $9,776 in actual damages. On remand, the trial court is instructed to enter the respective judgments as of October 7, 1986, to reflect the corrected figures. As so modified, the judgments are affirmed.

PREWITT, P.J., and MAUS, concur.

HOGAN, J., not participating.