**Patricia A. BRANDIN, et al., Appellants,**

v.

**Mary Elliott Keyes BRANDIN,
Respondent.**

No. 68211.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 23, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 28, 1996.

Application to Transfer Denied
April 23, 1996.

**836**

Robert J. Brummond, John L. Sullivan, Sullivan & Brummond, St. Louis, for appellant.

Alan Charles Kohn, Kohn, Shands, Elber, Gianoulakis & Giljum, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellants, Patricia A. Brandin, Douglas M. Brandin, and Robert N. Brandin ("children"), appeal from the judgment entered by the Circuit Court of the County of St. Louis dismissing their petition for tortious interference with an inheritance expectancy against respondent, Mary Elliott Keyes Brandin. We affirm.

Children are the natural children of Donald N. Brandin ("decedent") and Yvonne Brandin, his first wife who predeceased him. In January, 1981, decedent became engaged to Mary Elliott Keyes ("wife"). The parties executed an antenuptial agreement on December 31, 1981. This agreement allowed each party to retain control of his or her separate property and gave wife certain interests in decedent's estate should he predecease her. The agreement also gave wife a cause of action on the contract should decedent's will not reflect her right to the property as set forth in the agreement. The parties were married the next day, on January 1, 1982.

Decedent and wife amended the antenuptial agreement on January 16, 1989. This amendment deleted and replaced three provisions of the original agreement and altered another, allegedly increasing the amount of decedent's estate wife would receive if decedent predeceased her. Also on this date, decedent executed a revocable living trust and a pour-over will. The will provided that all property in decedent's estate was to become part of the trust, and that, if the trust was no longer "in existence," the estate was to be distributed in the same manner as it was in the trust instrument which was therein incorporated.

Decedent subsequently amended the trust instrument altering and allegedly increasing the economic benefits flowing to wife upon decedent's death. These amendments were executed on December 3, 1990, June 10, 1992, and November 3, 1993. The final trust instrument gave wife a certain sum from decedent's pension benefits and a one-third share of the trust property, both to be calculated before the assessment of estate taxes. Children received the balance of the pension plans and the remaining two-thirds share of the trust property, subject to the payment of estate taxes.

Decedent died on January 28, 1994. His total gross estate was calculated in excess of $8.7 million at the time of his death. On appeal, children argue wife is entitled only to the amount of decedent's estate she would have received under the original antenuptial agreement. On June 20, 1994, children filed a petition against wife alleging damages for tortious interference with inheritance expectancies, followed by the filing of an amended petition on July 29, 1994.

The amended petition alleged the following:

1. Children were "the only children of [decedent] who died on the 28th day of January 1994 . . . ."

2–4. Decedent and wife became engaged, executed a valid antenuptial agreement, and were married.

5. "[P]rior to January 16, 1989, [decedent] became ill to the extent he was susceptible to the undue influence" exercised by wife.

6. "[P]rior to January 16, 1989, [wife] stood in a confidential relationship with [decedent]."

7. "[P]rior to January 16, 1989, [wife] procured the drafting of documents, namely a revocable living trust, a will and amendment to the [antenuptial] agreement for execution by [decedent] which were executed by him," and these instruments "altered the disposition of [decedent's] property upon his death contrary to the provisions of the [antenuptial] agreement . . . in favor of [wife] . . . ."

8. Wife "procured the drafting of documents, namely the First Amendment to the trust . . . the Third Amendment to the Trust [sic] . . . and the Fourth Amendment to the trust. . . . The described instrument altered the disposition of [decedent's] property upon his death . . . in favor of [wife] . . . ."

9. "[A]s a direct and proximate result of the undue influence [wife] exercised to have [decedent] execute the foregoing described documents, [children] have suffered economic damage."

The petition further set out portions of the amendments altering the disposition of decedent's property and requested costs and punitive damages, alleging wife's conduct was "deliberate and maliciously calculated to deprive [children] of their expectancies."

On August 15, 1994, wife timely filed a protective claim in the probate division of the Circuit Court of St. Louis County, claiming the rights and property she was entitled to by virtue of the amended antenuptial agreement. On August 22, 1994, wife filed a mo-

tion to dismiss, or in the alternative, for summary judgment, contending children's petition failed to state a claim because they failed to file a will contest and trust contest as required by Missouri law, and because children failed to plead and adequately demonstrate they had suffered any economic damage. The trial court granted wife's motion to dismiss without stating the grounds wherefore on March 9, 1995. Children's motion for rehearing was denied on April 7, 1995, and this appeal follows.

 In reviewing the trial court's dismissal of a petition, the appellate court determines if the facts as pleaded and the reasonable inferences drawn therefrom state any ground for relief. *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993). It is the court's "duty to decide whether plaintiff is entitled to relief according to dictates of substantive law." *Theodoro v. City of Herculaneum*, 879 S.W.2d 755, 759 (Mo.App.E.D. 1994). Where the trial court does not set forth the reason for the petition's dismissal, as here, we presume the court based its ruling on the grounds stated in the motion to dismiss. *Id.* We will address each of the issues presented in wife's motion in turn.

 In order to state a cause of action for tortious interference with an inheritance expectancy, children had to allege wife, by fraud, duress, undue influence or other tortious means, intentionally prevented children from receiving an inheritance or gift from decedent, which inheritance or gift they would have otherwise received. *Hammons v. Eisert*, 745 S.W.2d 253, 257 (Mo.App.S.D. 1988). Missouri courts have not yet faced what constitutes an adequate pleading for this cause of action. Indeed, only one Missouri court has allowed such an action to stand. *See Id.* at 258.[1]

 Here, children failed to plead they had a valid expectancy of which they had been deprived. The pleading merely alleges children were "the only children of [decedent]" and concludes "[a]s a direct and proximate result of the undue influence [wife] exercised . . . [children] have suffered eco-

---

1. The *Hammons* case is discussed more fully, *infra.*

nomic damage." Although one could reasonably draw the inference children were the decedent's intestate heirs, the petition is void of any allegation decedent would have died intestate, or that he intended any certain property to pass to his heirs thereby. Children's petition also contains no facts from which these inferences could be drawn. In order to adequately plead a tortious interference cause of action, children had to present facts demonstrating wife's tortious interference with an *intended bequest. See Hammons*, 745 S.W.2d at 257 (citations omitted). Without these allegations or inferences, the court has no means by which it can determine whether children's intestate share would have been greater than what children received under the amended trust instrument. Children's conclusory allegation that they "suffered economic damage" without facts supporting such statement is insufficient to survive wife's motion to dismiss.

■ Children also make the argument the antenuptial agreement signed by decedent and wife before their marriage created some expectancy or inheritance right in them. Paragraph twelve of the agreement states the agreement "shall inure to the benefit of and shall be binding upon the respective heirs, devisees, legatees, executors and administrators of the parties hereto." However, paragraph three of children's pleading merely states

> [t]hat on the 31st day of December 1981, [decedent] and [wife] entered into a valid pre-nuptial agreement.

> That each of the parties were represented by independent counsel; full disclosure of all prospective marital rights in dissolution and upon death were described; full disclosure of the assets of each party were set out and the agreement was in all respects fair and equitable.

The petition contains no allegation of any benefit flowing to children by or through the agreement, nor did children attach a copy of the antenuptial agreement to their petition for the trial court's independent consideration. Thus, without other manifestations of decedent's intent to leave any specific property to children, the general language of paragraph twelve of the antenuptial agree-

ment is insufficient to support a tortious interference with inheritance expectancy action.

As Missouri courts have never directly faced this issue before, children turn to outside authority to support their position, citing *Estate of Jeziorski v. Tomera*, 162 Ill.App.3d 1057, 114 Ill.Dec. 267, 516 N.E.2d 422 (1987). However, our reading of *Jeziorski* highlights the deficiencies in children's case. In *Jeziorski*, the plaintiffs were four of the decedent's children; the named defendants were the decedent's two remaining children. *Id.*, 114 Ill.Dec. at 268, 516 N.E.2d at 423. There, "plaintiffs alleged that their expectancy was based on the fact that they are the decedent's children and the natural objects of his bounty," and continued that, "under the laws of intestacy, they would have received an equal share of decedent's estate." *Id.* at 270, 516 N.E.2d at 425. More importantly, the petition further alleged the existence of a prior will naming the plaintiffs as equal beneficiaries of the decedent's estate, thus illustrating the decedent's intended disposition of his property prior to the defendants' tortious interference. *Id.* As previously discussed, children's petition in the instant case is bare of allegations of fact supporting an expectancy in an intended bequest—whether through intestacy or some other means—which they otherwise would have received but for wife's tortious conduct.

■ Children may have realized the inadequacy of their pleading as now on appeal they try to alter the nature of their argument to encompass an inheritance right created under the original trust instrument which decedent later amended to further favor wife, as well as to state the undue influence of wife caused decedent to execute a "new will." These contentions are not what children set forth in their petition, however, and children are bound on appeal to the theory pled at the trial level. *Estate of Munzert*, 887 S.W.2d 764, 769 (Mo.App.E.D.1994).

Additionally, children argue they believe documents executed by decedent prior to those allegedly procured by wife will surface during discovery. However, children misconstrue the relationship between pleading

and discovery: Discovery is not a tool to be used by a plaintiff to find information to fill in the holes left in his or her pleading, but rather, a plaintiff's adequately pled petition allows the plaintiff to further find and develop support for his or her case. Allegations in a petition need not be pled with "certainty" as put forth by children. In pleadings, the party certifies only that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "allegations and other factual contentions ... *if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....*" Rule 55.03(b) (emphasis added).

Children had to plead they were deprived of an intended bequest. Children failed to allege any facts demonstrating they had a valid expectancy in any of decedent's property of which they were wrongly deprived, thereby causing them damage. Thus, the trial court's action dismissing children's petition was proper on this ground.[2] Moreover, even if we were to assume children had adequately pled facts showing they had standing, their claim would not lie under Missouri law for the other reasons set forth in wife's motion and to which our discussion now turns.

As previously noted, an action for tortious interference with an inheritance expectancy is relatively new to Missouri law, having been embraced by only one court to date. *See Hammons,* 745 S.W.2d at 258. This court, in addressing claims brought under the guise of tortious interference with inheritance expectancy actions, has ruled such claims are precluded where a will contest would have afforded the plaintiff full and adequate relief. *See McMullin v. Borgers,* 761 S.W.2d 718, 720 (Mo.App.E.D.1988); *see also, Smith v. Chatfield,* 797 S.W.2d 508, 510 (Mo.App.W.D. 1990) (holding plaintiffs' tortious interference action precluded where prior will contest afforded them full relief). In *McMullin,* the plaintiff was a named beneficiary in the decedent's original will, but was omitted as a

beneficiary under a second later will. Instead of filing a will contest seeking to have the second will invalidated, the plaintiff filed a claim for tortious interference with an inheritance expectancy against the defendant. This court found plaintiff's tort claim merely sought to replace the second probated will with the first will under which he was a named beneficiary, the same relief he would have been granted in a successful will contest. *McMullin,* 761 S.W.2d at 720. Thus, plaintiff could not recover in tort what he would have recovered in a properly pursued will contest. *Id.*

■ This approach seeks to "preserve the goals of the probate code" and serves to prevent plaintiffs from foregoing other available and proper remedies in favor of the "more lucrative damage options" available under the tortious interference claim. *Id.* at 719–20. Furthermore, Missouri courts have consistently rejected attempts by plaintiffs to bring various causes of action that were, in reality, attempts to circumvent the validity of a probated will. *See In Re Estate of Moore,* 889 S.W.2d 136, 137 (Mo.App.E.D.1994) (finding action to construe will really a will contest barred by the six month statute of limitations); *In Re Estate of Hutchins,* 875 S.W.2d 564, 567 (Mo.App.S.D.1994) (finding action to construe will really a will contest barred by six month statute of limitations); *Williams v. Bryan, Cave, et al.,* 774 S.W.2d 847, 848 (Mo.App.E.D.1989) (finding action for negligence against drafter of will really an attempt to invalidate one will and replace it with a previous will, an action provided for in a will contest). Once a will is admitted to probate it becomes binding and cannot be collaterally attacked. RSMo § 473.083.1 (1994); *Drew v. Platt,* 52 S.W.2d 1041, 1043 (St.L.App.1932); *see also, Williams,* 774 S.W.2d at 848–49 (probate of will after a will contest would render will valid and collaterally estop plaintiffs from challenging it in a later tort action).

Children alleged in their petition wife unduly influenced decedent to execute an

---

2. This is the second appeal entertained by this court in this matter. Children previously appealed, but the appeal was dismissed because the judgment was not final. Children, instead of seeking permission to file a second amended petition to cure any possible deficiencies, merely requested the trial court designate its order to be a final appealable judgment.

amendment to the parties' antenuptial agreement, a pour-over will, a trust, and subsequent amendments to the trust, all of which allegedly increased the amount of property wife was to receive under the original antenuptial agreement and thereby deprived children of their expectancies. Children argue their claim was proper under Missouri law, as the courts have accepted the cause of action when brought in the context of interference with a trust, and would allow it where no adequate probate remedy existed. We address children's appeal involving the tortious interference claim with respect to the trust first.

We believe the court's policy behind requiring plaintiffs to seek redress through other available and adequate forums, as it does with respect to wills in the probate court, correctly and logically extends to requiring plaintiffs to seek redress through courts of equity for challenges to express trusts. Just as "the probate code ... purports to provide the exclusive forum for such matters," *McMullin*, 761 S.W.2d at 719, "[j]urisdiction over trusts has always been regarded as 'one of equity's original and inherent powers.'" *In Re Frech's Estate*, 347 S.W.2d 224, 227 (Mo.1961) (citation omitted). Missouri recognizes actions to set aside trusts as the products of undue influence. *See Sebree v. Rosen*, 349 S.W.2d 865 (Mo. 1961); *Creek v. Union Nat. Bank in Kansas City*, 266 S.W.2d 737 (Mo.1954). Here, children had an available forum in which to seek the invalidation of the trust instrument on the grounds of wife's undue influence, essentially the same relief being sought by them in their tortious interference action. An action to set aside the trust, with the necessary will contest (discussed *infra*), gave children an adequate remedy. We find that where, as here, plaintiffs can receive an adequate remedy through already existing and appropriate remedies, a tortious interference with inheritance expectancy claim—and its attendant potential for abuse—will not lie.

Children argue their claim falls within the rule set out by the *Hammons* court. The *Hammons* case, however, requires a more narrow reading than that given it by children. In *Hammons*, the Southern District held the plaintiffs could recover for tortious interference of an inheritance expectancy where the defendant unduly influenced the decedent to revoke two certificates of deposit that she and defendant held in trust for the plaintiffs. *Id.* at 256. The court stated "the beneficiary of a revocable written trust has a cause of action, at least after the death of the settlor, against a person who, by the exercise of undue influence induces a settlor to revoke the trust ... and prevents the beneficiary from receiving that which he would otherwise have received." 745 S.W.2d at 258. However, in *Hammons*, the plaintiffs had no other remedy available to them. The certificates of deposit which had been previously held in trust for them had been fully revoked, thus, the trust no longer existed. Plaintiffs had no choice but to maintain a tortious interference action to compensate their loss. In the instant case, as previously discussed, children had an appropriate remedy in an action to set aside the trust.

Children's petition also alleged the will was the product of undue influence. Children cite the holding of this court in *McMullin* as authority for allowing their claim. In *McMullin*, we stated "[w]here ... a will contest provides essentially the same remedy and prevents any additional damages ... an action for tortious interference will not lie." 761 S.W.2d at 720. The holding of *McMullin*, contrary to children's view, does not state when a tortious interference action *will lie*, but merely points out one instance where it will not be allowed. Here, children had an adequate remedy at law and in equity had they properly filed a will contest and a trust contest. A successful trust contest would have resulted in the trust property passing into the decedent's estate to be distributed under his will; a successful will contest would have rendered decedent's will the product of undue influence and left his estate to be distributed according to the laws of intestate succession. Children, as interested parties, would be entitled to file objections to any final settlement allowing wife's claim,

and a hearing would be had.[3] RSMo § 473.590 (1994).

Further, even if we were to assume a tortious interference claim as to the trust and its amendments was permissible, children's cause of action, as pled, still would not lie under Missouri law. Children's allegation concerning the will is an attempt to invalidate its effect, thereby leaving decedent's estate to pass under the laws of intestate succession. This part of children's claim, if it were to be ruled on by the trial court, would be a collateral attack on the judgment of the probate court. As previously discussed, a probated will is binding. RSMo § 473.083.1. By law, children had six months from the date letters testamentary had been granted to file a petition contesting the will; otherwise, probate of the will becomes binding. *Id.* Thus, a will contest was necessary under the facts of this case, whether children would have contested the trust through an action to have it set aside or through a tortious interference claim.

Lastly, children contend that, even had they brought a will contest and an action to set aside the trust, their relief would not have been complete. Children maintain they have no remedy at law, other than a cause of action for tortious interference with an inheritance expectancy, that allows them to recover for *inter vivos* transfers from decedent to wife secured by her exercise of undue influence. We need not address the merits of this argument, however, as children's first amended petition is bare of any allegation concerning such transfers.

Based on the foregoing, the judgment of the trial court is affirmed.

SMITH, P.J., and RHODES RUSSELL, J., concur.

---

3. These proceedings could then be consolidated under Rule 66.01, as undue influence is the central issue in all three.