Carolyn MILLER, Appellant,

v.

Mary Jo and John MAUZEY, Terry Bruce and Deborah Miller, Janet E. and William Rankin, Respondents.

No. WD 53647.

Missouri Court of Appeals,
Western District.

Feb. 10, 1998.

---

Douglas M. Weems, Spencer Fane Britt & Browne, LLP, Kansas City, for appellant.

Lawrence V. Fisher, Frost, Fisher, and Pickett, Plattsburg, Thomas R. Summers, Utz, Litvak, Summers, Powers & Manring, St. Joseph, for respondents.

Before SPINDEN, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

LAURA DENVIR STITH, Judge.

The question before this Court is whether a creditor—Carolyn Miller, the plaintiff herein—may sue her ex-spouse's sister—Mary Jo Mauzey, the defendant herein—for property Ms. Mauzey was willed by her father upon proof that the reason the father willed the property to his daughter rather than to his son was because he knew that if his son got the property Ms. Miller would attach it to pay back maintenance owed her by the son. She alleges she can set aside the devise to the daughter as a fraudulent transfer of the son's expectancy interest, or alternatively that a constructive trust should be imposed on the daughter's inheritance. The trial

court dismissed the Petition, finding that it failed to state a cause of action.

We affirm. While we in no way approve of Terry Miller's alleged failure to pay court-ordered maintenance to Ms. Miller, the fact that at one point Terry Miller had an expectancy interest in his father's property did not give his former wife any rights in that property, which still belonged to the father. The father was free to make a will devising his property to persons other than his son and was free to do so even if one of the reasons for his action was that he did not want his property to go to his son's former wife upon his death.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When the marriage of Carolyn and Terry Miller was dissolved, Terry was ordered to pay Carolyn maintenance. Carolyn alleges that Terry is delinquent in his maintenance payments, and that for this reason she is his judgment creditor. She has not, however, been able to find adequate assets to attach in an effort to satisfy his debt to her.

Prior to the dissolution, Mr. Miller's father, Henry Miller, had not made a will. Henry Miller had three children: his son Terry and two daughters, Mary Jo Mauzey and Janet Rankin. Had Henry Miller died without a will, Mr. Miller and his two sisters would have been their father's heirs at law and would have inherited his real estate and other property. Sometime after the dissolution, Mr. Miller prepared a will in which he left two-thirds of his property to his daughter Ms. Mauzey and one-third to his daughter Ms. Rankin. The will left nothing to his son, Terry Miller.

Ms. Miller believes that the sole reason that Henry Miller left nothing to his son Terry was that Terry Miller and Mary Jo Mauzey "concocted and executed a scheme" to "transfer" Terry's expectancy interest in his father's real estate by prevailing upon their father, Henry Miller, to "create a will disclaiming Terry Miller's interest" in their father's real estate. She further asserts that Terry and his sister planned that, once their

father died, Terry would have his debt to Ms. Miller discharged in bankruptcy, and Ms. Mauzey would then transfer to her brother his one-third interest in their father's property.

Henry Miller died. Pursuant to the will, two-thirds of his property passed to Ms. Mauzey and one-third to his other daughter. Terry Miller declared bankruptcy, but then learned that his maintenance obligation was not dischargeable in bankruptcy. Ms. Mauzey kept the full two-thirds of the estate bequeathed to her and gave nothing to Terry.

Ms. Miller filed suit to obtain the one-third of the estate which she says should have passed to her ex-husband, Terry Miller. In Count I she asserts that the will was part of a scheme to fraudulently transfer Terry Miller's interest in the estate in violation of Section 428.024, RSMo 1994[1] and that it should be set aside on that basis. In Count II, she asserts that Ms. Mauzey's decision to keep the property was also a fraud on Terry Miller. She asserts Ms. Mauzey convinced Terry to get his father to leave two-thirds of the estate to her upon the promise that she would later transfer half of this inheritance back to Terry, that at the time she made this promise Ms. Mauzey had no intention of keeping it, that it was made in the course of a confidential relationship between the brother and sister, and that Terry Miller relied on Ms. Mauzey's material misrepresentation to his detriment and to the detriment of his creditor, Ms. Miller. Ms. Miller argues that the court should, therefore, impose a constructive trust on the portion of Ms. Mauzey's inheritance which otherwise would have gone to Terry Miller.

The trial court sustained the motion to dismiss on both counts. This appeal by Ms. Miller follows.

## II. STANDARD OF REVIEW

"In reviewing the trial court's dismissal of a petition, the appellate court determines if the facts as pleaded and the reasonable inferences drawn therefrom state any ground for relief." *Brandin v. Brandin*, 918 S.W.2d 835, 837 (Mo.App.1996), citing *Sulli-*

---

1. All Statutory citations are to RSMo 1994 unless otherwise indicated.

*van v. Carlisle,* 851 S.W.2d 510, 512 (Mo. banc 1993). "In assessing the sufficiency of a petition, we accept all properly pleaded facts as true, give them a liberal construction, and draw all reasonable inferences which are fairly deducible from the pleaded facts." *Thomas v. Evans,* 941 S.W.2d 872, 873 (Mo.App.1997), citing *Murphy v. A.A. Mathews,* 841 S.W.2d 671, 672 (Mo. banc 1992). The petitioner is "bound on appeal to the theory pled at the trial level." *Brandin,* 918 S.W.2d at 839, citing *Estate of Munzert,* 887 S.W.2d 764, 769 (Mo.App.1994).

## III. FRAUDULENT TRANSFER

■ Ms. Miller's petition, in Count I, alleges that a fraudulent transfer occurred in violation of Sections 428.024.1(1) and 428.024.1(2)(b).

Section 428.009(12) defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Section 428.024.1(1) provides that a fraudulent transfer *by a debtor* occurs when the debtor makes a transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." (Emphasis added). Section 428.024.1(2)(b) provides that such a fraudulent transfer occurs when *the debtor* makes the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation [while the debtor] [i]ntended to incur or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." (emphasis added) Section 428.034(4) provides that a "transfer is not made until *the debtor* has acquired rights in the asset transferred." (emphasis added).

Ms. Miller alleges that these statutes provide an extremely broad definition of transfer by including every possible mode of parting with an interest in an asset, and that they dictate that any such transfer is fraudulent when it is made with the purpose of hindering or defrauding any creditor. She alleges that this is what occurred here when her ex-spouse's father, Henry Miller, prepared a will leaving nothing to his son, one-third of his property to his daughter Ms. Rankin, and two-thirds of his property to his daughter Ms. Mauzey as a part of a scheme to defraud Ms. Miller out of her right to maintenance.

■ We disagree. As Ms. Miller recognizes, the prospective heir normally has no fixed or vested interest in a testator's property before the death of the testator. *White v. Mulvania,* 575 S.W.2d 184, 189 (Mo. banc 1978); *Brown v. Kirkham,* 926 S.W.2d 197, 200 (Mo.App.1996). "[N]o one is an heir to the living." *In re Matter of Hancock,* 834 S.W.2d 239, 241 (Mo.App.1992). Thus, while Henry Miller was alive, Terry Miller, the debtor, was, at most, an "heir expectant" or "heir apparent." *Brown,* 926 S.W.2d at 200.

Ms. Miller notes, however, that Missouri has recognized that an expectancy interest is a property interest which can be protected. *See, e.g., Mulvania,* 575 S.W.2d at 187–88; *In re Estate of Dawes,* 891 S.W.2d 510, 522–26 (Mo.App.1994); *Imgrund v. LaRue,* 851 S.W.2d 40, 43–45 (Mo.App.1993); *Skidmore v. Back,* 512 S.W.2d 223, 225–26 (Mo.App. 1974)(all involving protection of expectancy interests by impositions of constructive trusts). She further notes that, while no Missouri court has addressed the issue of whether expectancy interests are assignable, Missouri has recognized similar principles by holding that contingent remainders can be sold at execution. *Munday v. Austin,* 358 Mo. 959, 218 S.W.2d 624, 630–31 (1949). In addition, other states have held that an expectancy interest may be assigned for consideration, *Von Bulow v. Von Bulow,* 634 F.Supp. 1284, 1308 (S.D.N.Y.1986); *Bradley Lumber Co. v. Burbridge,* 213 Ark. 165, 210 S.W.2d 284, 288 (1948); *McAdams v. Bailey,* 169 Ind. 518, 82 N.E. 1057, 1059 (1907); *Clendening v. Wyatt,* 54 Kan. 523, 38 P. 792, 793 (1895), and that a decision by a person to renounce an inheritance following the death of the testator can be set aside as a fraudulent transfer, *Stein v. Brown,* 18 Ohio St.3d 305, 480 N.E.2d 1121, 1123 (1985); *In re Estate of Reed,* 566 P.2d 587, 589–91(Wyo.1977); *In re Sherower's Estate,* 171 Misc. 295, 12 N.Y.S.2d 530, 532–33 (N.Y.Sup. Ct.1939). Ms. Miller argues that these principles should be extended and applied here

by holding that a potential heir cannot scheme with the testator to extinguish an expectancy when the purpose of doing so is to defeat the interest of creditors.

While Ms. Miller's argument is ingenious, it runs into numerous, insurmountable problems which prevent us from accepting it. Most basically, we note that all of the cases and statutes she cites, from Missouri or elsewhere, concern transfers by the *debtor* of *the debtor's already existing interest in property.* More specifically, each involves a debtor's transfer of the debtor's expectancy interests, of the debtor's contingent remainder interest, or of the debtor's inheritance after the testator had died. Here, even assuming we were to hold that Terry could transfer his expectancy interest in his father's estate, he did not do so. True, Terry Miller's expectancy interest was extinguished, but this occurred not by his transfer of it, but rather by his father's decision to make a will leaving all his property to Terry Miller's sisters. Even then, there was no transfer of the property; the latter did not occur until the father died and the property passed through the will to Terry's sisters. For this reason, even if Missouri would recognize the right of a prospective heir to transfer an expectancy interest by assignment, and even if such a transfer could be considered fraudulent in some situations, these principles would not apply here, because Mr. Miller did not transfer an interest in his father's property.

▮ While Terry Miller could have and may have influenced his father to make the decision not to leave him any money, it was still his father's property and his father's decision to make. Even assuming that Henry Miller made this decision in part because he did not want Ms. Miller to attach the inheritance for back maintenance, this would not constitute a fraudulent transfer. Henry Miller owed no debt to Ms. Miller and had every right to devise his property to whomever he pleased and to change his mind up until the time of his death. *Cf. White v.*

*Mulvania,* 575 S.W.2d at 189. There was, thus, nothing to prevent him from deciding not to leave his property to a son whom he may have believed to be a spendthrift or who had debts which would eat up the inheritance, even though such a decision meant the son had less money than he otherwise would have had to pay his creditors. For these reasons, we affirm the trial court's dismissal of Count I, alleging fraudulent transfer.

## IV. FRAUD/CONSTRUCTIVE TRUST

▮ Count II of the Petition alleges facts inconsistent with those set out in Count I to the extent it alleges not that Terry Miller fraudulently transferred his interest in his father's property, but that Ms. Mauzey defrauded Terry Miller.

More specifically, Count II alleges that Ms. Mauzey (Terry Miller's sister) promised Terry that if Terry told his father to will Terry's part of the estate to her, she would hold it until he was able to have Ms. Miller's judgment against him discharged in bankruptcy and would, thereafter, transfer to him the part of the father's estate he otherwise would have inherited. Count II further alleges that Ms. Mauzey made this promise knowing it to be false, intending to keep the property for her own use, and intending her representations to induce her brother, with whom she was in a confidential relationship, to transfer his interest in their father's real estate to her. In short, Count II alleges that Ms. Mauzey defrauded her brother Terry Miller.

Count II fails to state a claim for the same reasons as those given for Count I above, to wit, it wrongly assumes that Terry Miller had an expectancy interest which he transferred to his sister. He never transferred his expectancy interest to his sister or to anyone else, however. He therefore could not have been wrongfully procured to transfer it by fraud, actual or constructive, on the part of Ms. Mauzey.[2]

▮ Even if Terry had been fraudulently induced to give up a property interest he

---

2. Because this count does not allege fraudulent transfer, Section 428.034's definition of "transfer" does not directly apply. Webster's Third New International Dictionary 2427 (1993) also defines "transfer" broadly, however, stating that it is "the conveyance of right, title, or interest in either real or personal property from one person to another by sale, gift, or other process."

otherwise had, however, Count II would fail. Ms. Miller is seeking to state a claim for imposition of a constructive trust. As noted in *In re Estate of Dawes*, 891 S.W.2d 510 (Mo.App.1994), a constructive trust will be imposed in favor of the party deprived of property by the fraudulent conduct of the defendant if the grantor of the property gratuitously transferred it to the grantee:

> in reliance on a promise or assurance by the grantee that he will convey, dispose of or apply the property in the particular manner indicated, directed or *intended by the grantor* but the grantee repudiates such promise and seeks to retain the property for his own use and benefit *thereby depriving the person for whose benefit the conveyance was intended of the property,* which otherwise and but for the fraudulent conduct of the grantee would have been directly conveyed or devised to him or applied for his benefit ...

*Id.* at 523 (emphasis added).

This means that, in order to prove she is entitled to a constructive trust, Ms. Miller must show that the *grantor* of the interest, here, the testator, Henry Miller, was fraudulently induced, by Ms. Mauzey's promise, to devise the property in question to her.

Ms. Miller's Petition does not allege that Ms. Mauzey fraudulently induced her father to leave his property to her, however. It alleges that the fraud was procured upon Ms. Mauzey's brother, Terry Miller. Yet, as noted earlier, Terry Miller did not part with any property interest, for he had only an expectancy interest in the real estate. That interest was within his father's control, and it was his father who defeated that interest by writing a will.

Even if Ms. Miller had properly alleged that it was Henry Miller who was fraudulently induced into leaving his property to Ms. Mauzey, she would not have stated a claim for relief. Such facts could arguably give Terry Miller the right to sue for the imposition of a constructive trust in his favor, because a constructive trust may be available to one whom has been deprived of even an "expectancy" in property if that deprivation occurred as a result of the fraudulent conduct of another. *Skidmore v. Back,* 512 S.W.2d 223, 231 (Mo.App.1974). However, Terry Miller has not brought such a claim. It is Ms. Miller who is suing for imposition of the constructive trust.

Ms. Miller cites us to no authority, nor do we find any, which suggests that a creditor has a right to assert such a claim or to force the debtor to do so. The ramifications of recognition of such a cause of action convince us that we should not recognize such a claim here. If Ms. Miller could force her ex-husband to claim an equitable right to a constructive trust, then any creditor could force any debtor to bring a suit against a third party for such purposes, or could claim standing to do so in their stead. We decline to extend the law in this fashion.

For these reasons, Ms. Miller's Petition fails to state a claim, and the motion court did not err in sustaining the motion to dismiss.

All concur.