Cory WAGONER,[1] An individual and beneficiary of Missouri, Petroleum Storage Tank Insurance Fund trust, Plaintiff-Appellant,

v.

CONOCOPHILLIPS, a Delaware Corporation, Don McNutt, Jim Ford, Harry Bozoian, Schuyler Mariea, Danny Opie, Melvin Schebaum, Renee Slusher, John Albert, Tom Kolb, Tom Pfeiffer,

and

Sooner Insurance Company, Defendants-Respondents.

No. SD 34293

Missouri Court of Appeals, Southern District, Division Two.

Filed: March 31, 2017

Application for Transfer Denied April 20, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 2017

1. The Amended Final Judgment incorrectly spells Wagoner as "Waggoner." We use the correct spelling of "Wagoner" in this opinion.

Attorneys for Appellant: Thomas W. Millington and Kathryn A. Millington, of Springfield, MO.

Attorneys for Respondents Conoco Phillips and Sooner Insurance Co.: Virginia L. Fry and Ashley L. Norgard of Husch Blackwell LLP, Springfield, MO, and Glenn Burhans Jr., of Stearns Weaver Miller Weissler Alhadeff & Sitterson PA, Tallahassee, FL.

Attorneys for Respondents McNutt, Ford, Bozoian, Mariea, Opie, Schebaum, Slusher, Albert, Kolb and Pfeiffer: Chris

Koster, Attorney General, and Elliott J. Usher, and Brian L. Allard, Assistant Attorneys General, of Jefferson City, MO.

## WILLIAM W. FRANCIS, JR., J.

Cory Wagoner ("Wagoner"), a contributor to, and beneficiary of the Missouri Petroleum Storage Tank Insurance Fund ("the Fund"),[2] appeals the amended judgment of the trial court granting summary judgment in favor of ConocoPhillips.[3] In three points on appeal, Wagoner asserts trial court error in granting summary judgment. We grant Wagoner's second point in part, reverse the judgment as to Count IV of Wagoner's petition and remand for further proceedings as to that count, but otherwise deny Wagoner's points and affirm the judgment.[4]

### Facts and Procedural History

■ The history of this case is complex. We recite only those facts necessary for the resolution of the issues before us.[5]

This matter arises out of allegations that ConocoPhillips failed to return money paid to it by the Fund, as reimbursements for taking corrective actions and cleaning up leaking underground storage tanks.

In November 2012, Wagoner filed suit against ConocoPhillips in the Circuit Court of Greene County ("*Wagoner I*"). Wagoner alleged that, as a petroleum storage tank owner and taxpayer, as well as a contributor to and a beneficiary of the Fund, he was entitled to seek damages from ConocoPhillips due to money having been wrongfully obtained by ConocoPhillips from the Fund.

On January 3, 2013, Wagoner filed a second amended petition. This petition added the Fund as "fiduciary and beneficiary," included additional allegations about the Fund, and specified that "[r]elief and recovery sought herein by [Wagoner] is for the benefit of [Wagoner] as a partici-

---

2. The Missouri Petroleum Storage Tank Insurance Fund was first established by the Missouri General Assembly in 1989 (*see* section 319.129, RSMo Cum.Supp. 2008), in response to federal legislation requiring owners and operators of underground storage tanks (USTs) to have financial resources available to pay for cleanup of spills and/or leaks from their tanks. Originally called the "Underground Storage Tank Insurance Fund," it began insuring owners and operators of such tanks in May 1992. http://www.pstif.org/about.shtml. Last visited March 21, 2016.

The Fund acts like an insurance policy, and is funded by transport load fees (based upon the amount of petroleum product shipped in the state) and participation fees (akin to a premium paid to obtain insurance coverage for an owner or operator of an UST, also known as a petroleum storage tank ("PST")). The Fund reimburses participants for certain eligible costs incurred in remediating leaking USTs. If an eligible leak occurs, and if certain prerequisites are satisfied, Fund participants may seek Fund reimbursement for those costs by submitting an application form and supporting documentation.

3. As of May 1, 2012, Phillips 66 was "spun off" from ConocoPhillips as a separate and independent corporate entity. As a result, Phillips 66 assumed certain liabilities relating to USTs. Phillips 66 would be liable for any judgment rendered as an assignee of ConocoPhillips. We refer only to ConocoPhillips in the body of this opinion, although Phillips 66 is used interchangeably in the record.

4. All motions taken with the case are overruled.

5. "All facts must come into the summary judgment in the manner required by Rule 74.04(c)(1) and (2), that is, in the form of a pleading containing separate separately numbered paragraphs and a response addressed to those numbered paragraphs[.]" *Metro. Nat'l Bank v. Commonwealth Land Title Ins. Co.*, 456 S.W.3d 61, 67 (Mo. App. S.D. 2015) (internal quotation and citation omitted). We recite facts not otherwise part of the summary judgment record for clarity as necessary.

All rule references are to Missouri Court Rules (2016).

pant, and the Fund as fiduciary and beneficiary of recovery of damages asserted."

The Fund and ConocoPhillips moved to dismiss Wagoner's second amended petition on the grounds that Wagoner lacked standing. In March 2013, the trial granted the Fund's motion to dismiss, but denied that of ConocoPhillips. That same month, Wagoner filed a third amended petition to add a Racketeer Influenced and Corrupt Organizations ("RICO") claim against ConocoPhillips.

In April 2013, ConocoPhillips removed the case to the U.S. District Court for the Western District of Missouri on the basis of the RICO claim. Wagoner filed a motion to remand. The district court denied Wagoner's motion for remand, reasoning: "[Wagoner] is not the right party to bring claims on behalf of the ... Fund ... against ConocoPhillips, a third party. Rather, that right belongs solely to the ... Fund." Wagoner subsequently voluntarily dismissed his federal case.

The Missouri Attorney General then brought suit in the Circuit Court of St. Louis City against ConocoPhillips, asserting similar allegations, in *State of Missouri, ex rel. Koster v. ConocoPhillips Company*, 1322-CC00929 (the "St. Louis lawsuit").

On September 13, 2013, Wagoner also brought a new action in the Circuit Court of Greene County on behalf of the Fund ("*Wagoner II*") against ConocoPhillips and its insurer, Sooner Insurance Company, as well as the current board of trustees of the Fund (the "Board").

Most of the claims in both *Wagoner II* and the St. Louis lawsuit rested upon the contention that ConocoPhillips defrauded the Fund by failing to disclose insurance that would have covered the remediation costs reimbursed by the Fund. Both suits claimed that alleged insurance coverage precluded ConocoPhillips from obtaining reimbursements from the Fund. However, the *Wagoner II* petition also sought, in Count IV, removal of the Fund's trustees for alleged breaches of fiduciary duty occurring both before and during litigation, a claim which was not asserted or even suggested in the St. Louis lawsuit.

Wagoner attempted to intervene in the St. Louis lawsuit for the purpose of moving to dismiss it in favor of *Wagoner II*. The St. Louis court denied Wagoner's motion to intervene, stating:

The record does not support a finding that Wagoner has the requisite interest in the subject matter of this case to warrant intervention. Wagoner has paid into the PST Fund, but has not made any claim against it, nor has he been denied a claim, nor is there any evidence that the PST Fund will be unable to meet its statutory obligations to Fund participants in the future.

Wagoner does not have a private cause of action to seek reimbursements for the Fund. Section 319.127 relates to enforcement of the PST Fund statutes. The statute contains no express provision either establishing or prohibiting a private cause of action. There is, however, an express provision authorizing the Department of Natural Resources to "request either the attorney general or a prosecuting attorney to bring any action authorized in this section in the name of the people of the State of Missouri." RSMo § 319.127. See Johnson v. Kraft Gen. Foods, Inc., 885 S.W.2d 334, 336 (Mo. 1994). Our Supreme Court has said that, "[w]hen the legislature has established other means of enforcement, we will not recognize a private civil action unless such appears by clear implication to have been the legislative intent." Id. ... The Court concludes that Wagoner does not have an independent cause of

action for the reimbursement of PST Fund monies.

Wagoner asserts that the PST Fund is a special statutory trust to which he is a beneficiary, giving him standing to sue for reimbursement from [ConocoPhillips] on behalf of the Fund. The argument is without merit, as Wagoner cannot assert a claim on behalf of the PST Fund against a third-party.... In Missouri, the *property* of the trust can only be recovered by the trustee, and the beneficiaries have no legal capacity to sue for [trust res] recovery. Baker v. Dale, 123 F.Supp. 364, 368 (W.D. Mo. 1954). In its order denying Wagoner's motion for remand [in *Wagoner I*], the Federal District Court correctly stated Missouri law on this issue:

> Under [Missouri] statutes and Missouri case law, Wagoner is not the person to enforce remedies at law, such as declaratory judgment and fraud claims, against [ConocoPhillips].... "As a general rule, a beneficiary may not bring an action at law on behalf of a trust against a third party.... The right to bring such an action belongs to the trustee." Int'l Ass'n of Fire Fighters, Local 2665 v. City of Clayton, 320 F.3d 849, 851 (8th Cir. 2003) (citing Restatement (Second) of Trusts §§ 280, 281 (1) (1957)). This includes claims committed by a third party with respect to trust property of which the beneficiary is not in possession. See Restatement (Second) of Trusts § 281 cmt. B (1959). Wagoner's participant status is similar to a trust beneficiary. He is thus not the right party to bring claims on behalf of the PST Fund, the trust against [ConocoPhillips], a third party. Rather, that right belongs solely to the PST Fund.

W.D.Mo. Order, pgs 4-5. This Court agrees. Because Wagoner cannot bring

suit to recover PST Fund assets, he cannot intervene in this case to dismiss the AG's case in favor of his own Greene County suit [i.e., *Wagoner II*].

. . . .

Finally, the Court finds that Wagoner's interests are, on this record, adequately represented by the existing parties.... Wagoner and the Attorney General seek the same outcome—reimbursement of Fund monies, and there is no evidence that the Attorney General and the trustees are not able and willing to pursue the claim in this case.

After extensive discovery, a settlement agreement was reached in the St. Louis lawsuit, and the "Settlement Agreement and Release" was approved by the St. Louis court on December 11, 2014. As part of the settlement, the Fund released all claims against ConocoPhillips arising out of the facts at issue. Specifically, under the settlement agreement, the Fund agreed to

release and discharge, and covenant not to sue, Phillips 66 and its past and current officers, directors, members, employees, representatives, stockholders, affiliates, parents, subsidiaries, partners, agents, servants, insurers, sureties, predecessors, successors, and assigns, receivers, executors, administrators, and beneficiaries, and any and all entities in which Phillips 66 has or had an interest, directly or indirectly, from and concerning any and all liability, rights, claims, demands, damages, causes of action, or controversies of every kind and description, whether known or unknown, and regardless of the legal theory, relating to: (a) the Litigation [*i.e.*, the Fund's case]; (b) the Coverage Claims, including any alleged failure to disclose facts or information related thereto; (c) any requests or claims for reimbursement filed by or on behalf of Phillips 66 with the

Missouri Fund on or before the Effective Date, or disclosures or communications related thereto, or for payments made by the Missouri Fund as a result of those requests, claims, disclosures, or communications; (d) any payments made by the Missouri Fund as a result of requests or claims for reimbursement submitted by or on behalf of Phillips 66 related to the Coverage Claims that could or should have been included in the Litigation; (e) any claim brought by or on behalf of Missouri that Phillips 66 received, or was eligible to receive, payments or other recovery from the Coverage Claims for the cost of environmental remediation of any property located within the State of Missouri for which any party filed (or files) a reimbursement request or claim with the Missouri Fund; (f) any claim brought by or on behalf of Missouri that Phillips 66 is obligated to reimburse the Missouri Fund for any reason relating to its recoveries in the Coverage Claims; (g) any payments the Missouri Fund has made or may in the future make to third parties or subsequent owners of any sites currently or formerly owned, operated, or supplied by Phillips 66 located in the State of Missouri, if the theory is that such payment was/is covered by the Coverage Claims; and (h) any claims for penalties, fines, exemplary damages, attorneys' fees, costs, and interest for violations concerning any UST site in the State of Missouri, owned or operated by Phillips 66 that occurred before the Effective Date.

Wagoner appealed the judgment denying intervention in the St. Louis lawsuit, but our supreme court affirmed. *See State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397 (Mo. banc 2016) ("*Koster*").

In *Wagoner II*, the trial court granted summary judgment in favor of ConocoPhillips on August 14, 2015, on the basis that: (1) ConocoPhillips had already compensated the Fund for the alleged wrongful payments; (2) the Fund's trustees (the individual defendants) had released ConocoPhillips for all claims related to the alleged wrongful payments; and (3) Wagoner asserted claims only on behalf of the Fund. The trial court concluded that it could grant no additional relief.

 . Wagoner now appeals from the *Wagoner II* August 14, 2015 summary judgment in favor of ConocoPhillips.

### Wagoner Lacks Standing Except as to Count IV

Standing is a threshold issue and a prerequisite to a court's authority to address substantive issues. Standing is a necessary component of a justiciable case that must be established prior to adjudication of a case's merits. Moreover, standing is an antecedent to the right to relief. Therefore, prior to addressing the merits of [appellant's] claim[,] . . . this Court must first determine whether [appellant] had standing.

*Byrne & Jones Enterprises, Inc. v. Monroe City R-1 Sch. Dist.*, 493 S.W.3d 847, 851 (Mo. banc 2016) (internal quotations and citations omitted).

Wagoner's standing[6] was taken up by our supreme court in *Koster*:

In the absence of a statute conferring an unconditional right of intervention, an applicant seeking intervention must file a timely motion and show three elements: (1) an interest relating to the property or transaction which is the subject of the action; (2) that the applicant's

---

6. During oral argument, counsel for Wagoner admitted that Wagoner asserts no individual claim, and that taxpayer standing is not at issue.

ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest. The proposed intervenor carries the burden of proof. Because Wagoner's motion to intervene failed to address—let alone establish—these elements, the trial court did not err in overruling Wagoner's motion.

Instead of addressing the elements of intervention as a matter of right, Wagoner's motion simply asserts that he must be allowed to intervene for purposes of moving to dismiss the suit because: (1) the attorney general lacks standing to sue Phillips for amounts improperly received from the Fund and (2) the attorney general's suit was filed after—and, therefore, must yield to—Wagoner's previously filed lawsuit against Phillips to recover those same amounts. These arguments are not well taken.

First, Wagoner's focus on whether the attorney general has standing to sue Phillips is misdirected. The Board is the real party in interest seeking recovery from Phillips, not the attorney general. The attorney general is merely representing the Board, at the Board's request, as he is authorized to do. *See* § 27.060. Second, even assuming that Wagoner was the first to file suit against Phillips, his motion to intervene in the present suit failed to show: (1) that Wagoner has a legally protectable interest in the subject matter of the Board's suit against Phillips; (2) that this interest would be impaired or impeded if the Board's suit against Phillips was allowed to proceed without him; and (3) that the Board would not adequately protect Wagoner's interest if intervention was denied.

Wagoner's motion to intervene under Rule 52.12(a) fails to articulate a specific, legally protectable interest in the subject matter of the Board's suit against Phillips. On appeal, Wagoner suggests that—because he might be a claimant against the Fund at some hypothetical point in the future—he has a right to sue third parties (e.g., Phillips) that recover from the Fund improperly. According to Wagoner, this right gives him an interest in the subject matter of the Board's suit against Phillips because the Board might not recover as much from Phillips as he could. The Court need not address whether this is the sort of interest that would give rise to a right to intervene under Rule 52.12(a) because Wagoner fails to demonstrate that—as a potential future claimant against the Fund—he has a right to sue third parties he thinks have recovered from the Fund improperly. The Board certainly has the right to sue to recover moneys owed to the Fund, *see* § 319.129.4, but nothing in the statutes creating the Fund and authorizing the Board to administer it gives such a right to Wagoner simply because he might someday be a claimant against the Fund. *See Johnson v. Kraft Gen. Foods, Inc.*, 885 S.W.2d 334, 336 (Mo. banc 1994) ("[W]hen the legislature has established other means of enforcement, we will not recognize a private civil action unless such appears by clear implication to have been the legislative intent.") (quotations omitted). *Cf. Int'l Ass'n of Fire Fighters, Local 2665 v. City of Clayton*, 320 F.3d 849, 851 (8th Cir. 2003) ("As a general rule, a beneficiary may not bring an action at law on behalf of a trust against a third party.... The right to bring such an action belongs to the trustee.") (quotations and citations omitted). Accordingly, Wagoner fails to show the first element required for intervention.

. . . .

[E]ven if Wagoner had demonstrated both that he has a legally protectable

interest in the subject matter of the Board's suit against Phillips and that his ability to protect that interest without intervening is impaired or impeded, Wagoner failed to show that the Board would not adequately protect his interest in the absence of intervention. Wagoner does not allege—and made no effort to prove—that the Board's pursuit of its claim against Phillips was fraudulent, collusive, or a breach of its fiduciary duties. At most, Wagoner simply asserts that the Board should have reached a better settlement with Phillips and that he would have done so. As with Wagoner's other arguments, this falls well short of establishing a right to intervene under Rule 52.12(a) on the ground that the Board would not represent his interests (and those of all other future potential claimants against the Fund) in an adequate manner.

*Koster*, 493 S.W.3d at 403–05 (internal quotations and citations omitted) (internal footnote omitted).

■ We are compelled to follow the analysis of our supreme court in *Koster*—Wagoner has no "specific, legally protectable interest in the subject matter of the [Fund's] suit against [ConocoPhillips]." *Id.* at 404. Further, even if he did, Wagoner does not show how the Fund failed to adequately protect his interests. Given these standing deficiencies, we need not explain why Wagoner's claims, except Count IV, are further barred by release as part of the settlement agreement in the St. Louis lawsuit.[7]

### Summary Judgment Cannot Stand as to Count IV

The circuit court granted summary judgment against Wagoner on Count IV,

his breach-of-fiduciary-duty claim against the Fund's trustees, based on the flawed reasoning that summary judgment against Wagoner on the other counts resolved the issues in Count IV as well. However, as the Fund effectively conceded at oral argument, *Koster*'s no-standing analysis does not bar Wagoner's Count IV.

■ We begin, as we must, with the general proposition that beneficiaries have standing to bring equitable actions to call a trustee to account for his or her decisions and actions and, to whatever extent permitted, may have a trustee removed or otherwise held responsible for a proven breach of fiduciary duty. *Deutsch v. Wolff*, 994 S.W.2d 561, 566-67 (Mo. banc 1999).

■ The denial of Wagoner's motion to intervene in the St. Louis litigation does not preclude his breach-of-fiduciary-duty claim in this case. While the supreme court found that Wagoner's interests were too speculative to allow him to intervene in the Fund's suit against ConocoPhillips, that court explicitly did not consider any claim that the Fund's trustees had breached their fiduciary duties. *Koster*, 493 S.W.3d at 404-05. Even if it had, Rule 52 rulings are the result of procedural motion practice, not decisions rendered on the merits after substantive trials. *Allred v. Carnahan*, 372 S.W.3d 477, 482-83 (Mo. App. W.D. 2012).

■ Collateral estoppel and *res judicata* do not bar Wagoner's claim. None of the parties to the St. Louis lawsuit alleged any breach of fiduciary duty by Fund trustees as Wagoner has done here, nor could they have without admitting complicity or, at

---

7. Nor need we reach Wagoner's claims of standing per sections 456.1-103(10) and 456.2-201 of the *Missouri Uniform Trust Code* because Chapter 319 gives the Attorney General authority to file suit on behalf of the Fund, and the Attorney General did so in this case. We need not speculate as to the result had the Attorney General not filed suit.

the very least, a conflict of interest. Because the issue was not before the court and the St. Louis lawsuit was dismissed with prejudice, the issue was not unambiguously ruled in a final judgment on the merits, a necessary requirement for application of *res judicata* or collateral estoppel. *See State ex rel. Pryor v. Nelson*, 450 S.W.3d 811, 815 (Mo. App. W.D. 2014) (application of *res judicata* or collateral estoppel requires a final judgment on the merits, unambiguously deciding the claim or issue).

■ Finally, the release in the St. Louis lawsuit does not preclude Wagoner's claim. The release executed to settle the St. Louis lawsuit ran in favor of ConocoPhillips and its related entities, not in favor of the Fund or its trustees, and certainly did not purport to include or preclude any breach-of-fiduciary-duty claim against the Fund's trustees.

We do not find, and are not cited to, any legal basis to affirm the summary judgment as to Wagoner's Count IV. Nothing in *Wagoner I* or the St. Louis lawsuit precludes Fund beneficiaries such as Wagoner from litigating an alleged breach of the Fund trustees' fiduciary duties. We take no position on the merits of this claim, finding only that judgment as a matter of law was not appropriate as to Count IV.

## Conclusion

As to Count IV of Wagoner's petition only, we reverse the judgment and remand the case for further proceedings. In all other respects, the judgment is affirmed.

NANCY STEFFEN RAHMEYER, J.—CONCURS

DANIEL E. SCOTT, J.—CONCURS