

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| FORREST K. BACKER, JR., ET AL., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | WD86908 (Consolidated with WD87068) |
| | ) | |
| DAVID A. BACKER, ET AL., | ) | Opinion filed: November 26, 2024 |
| | ) | |
| Respondents. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CALLAWAY COUNTY, MISSOURI
THE HONORABLE J. HASBROUCK JACOBS, JUDGE**

Division Two: Alok Ahuja, Presiding Judge,
Edward R. Ardini, Jr., Judge and W. Douglas Thomson, Judge

Forrest K. Backer, Jr., Laney Backer Clemens, and Sandra Backer ("Plaintiffs") appeal a judgment of the Circuit Court of Callaway County dismissing their First Amended Petition and denying leave to file their Second Amended Petition.

Plaintiffs are beneficiaries of trusts that were created by J.O. Wise and Blanche Wise. J.O. and Blanche[1] were a married couple who had no children. They each created a trust and named six members of their family as beneficiaries: Plaintiffs, Defendant David Backer, and two individuals who are not parties to this action. J.O. died in 2014 and

---

[1] Because many of the individuals involved in this matter share a last name, we refer to them by first name only. No disrespect or familiarity is intended.

Blanche died in 2022. During the eight years between their deaths, Blanche served as trustee of both trusts. Plaintiffs allege that during this time period, David fraudulently induced Blanche to transfer assets from both trusts and her own property to him and a corporation he owned, Wise Bros., Inc. ("Wise Bros.").

In their First Amended Petition, Plaintiffs asserted five claims of tortious interference with an inheritance expectancy against David and Wise Bros. (collectively, "Defendants"). Defendants moved to dismiss on four grounds: failure to state a claim upon which relief can be granted, lack of standing, statute of limitations, and failure to join necessary and indispensable parties. The trial court granted Defendants' motion to dismiss without stating its basis for the ruling. Plaintiffs filed a motion for leave to amend their petition, which was denied by the trial court.

For the reasons stated below, we find the trial court erred in dismissing some of Plaintiffs' claims—specifically, Plaintiffs' claims of tortious interference relating to Blanche's property and her trust assets. However, the trial court did not err in dismissing the tortious interference claims relating to the assets of J.O.'s trust. Thus, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### Allegations in First Amended Petition[2]

J.O. and Blanche were farmers. Together they wholly owned Wise Bros., a corporation that owned and farmed more than 1,300 acres in Callaway County and engaged

---

[2] "When reviewing a motion to dismiss, appellate courts liberally construe the pleadings, accept all alleged facts as true, and construe the facts in a light most favorable to the pleading party." *Matthews v. Harley-Davidson*, 685 S.W.3d 360, 370 (Mo. banc 2024) (internal marks omitted).

in the buying and selling of agricultural equipment, construction equipment, trucks, and trailers. They owned and lived on a tract of land that included residential dwellings, industrial shop facilities, storage buildings, a barn, and grain bins. This 42-acre tract of land was legally configured as two separate parcels: Parcel #1 and Parcel #2.

On August 11, 2010, J.O. settled (in other words, created) the James O. Wise, Jr. Revocable Trust (the "J.O. Trust"), naming himself and Blanche as trustees, and Blanche settled the Blanche B. Wise Revocable Trust (the "Blanche Trust"), naming herself and J.O. as trustees. They transferred all of their interest in Parcel #1 and half of their interest in Parcel #2 into the trusts. They also established brokerage accounts for the trusts, into which they transferred substantially all of their personal financial investments.

Also on August 11, 2010, acting in their capacities as directors and officers of Wise Bros., they executed Wise Bros. stock certificates evidencing that J.O. owned 1,918 shares of Wise Bros. stock, transferable on his death to the J.O. Trust, and Blanche owned 1,918 shares of Wise Bros. stock, transferable on her death to the Blanche Trust.

J.O. died on March 9, 2014. Upon his death, J.O.'s stock transferred to the J.O. Trust, the one-half interest in Parcel #2 that was not previously transferred to the trusts transferred to the J.O. Trust, and the J.O. Trust became irrevocable, with Blanche being the sole trustee. When J.O. died, the J.O. Trust had a fair market value of $10,107,719 and Wise Bros. had a fair market value of $10,537,632.

After J.O. died, David took control of Blanche's financial activities and began to communicate with her financial advisor. David obtained check writing authority on the Blanche Trust account and the Wise Bros. farm account. He represented to Blanche that he

3

was in a "partnership" with her and his contribution to the partnership was to "run" Wise Bros. In 2015, David induced Blanche to appoint him as a director and secretary of Wise Bros., and appoint herself as president with "full power to act on behalf of the company."

In May 2015, David induced Blanche to cancel her August 11, 2010 stock certificate and issue a new stock certificate transferring her 1,918 shares of Wise Bros. stock to him (giving him a one-half ownership interest in the business). In January 2016, David induced Blanche to sign deeds transferring all of Parcel #1 and Parcel #2 to Wise Bros. On December 16, 2016, David induced Blanche to transfer J.O.'s stock from the J.O. Trust to David in exchange for a $3 million promissory note; the purchase price of the stock was substantially less than its fair market value and most recent valuation. As a result of this transfer, David retained sole ownership of Wise Bros.

Beginning in March 2017, and continuing until Blanche's death, David—and Blanche induced by David—expended funds of the Blanche Trust account to acquire property for Wise Bros., to fund purchases made by David that improved property owned by Wise Bros., and to otherwise directly benefit Wise Bros. and David. David caused the Blanche Trust to pay all of the expenses of Wise Bros. In 2019 and 2020, David—and Blanche induced by David—caused the J.O. Trust to transfer funds to the Blanche Trust account and a Blanche Trust line of credit, which were used for the benefit of David and Wise Bros.

Blanche died on May 20, 2022. Upon her death, her trust became irrevocable, and David become the successor trustee of both the J.O. Trust and the Blanche Trust. The trusts provided that, upon the deaths of both J.O. and Blanche, the remainder of the trust estate

4

shall be distributed (after a distribution to a church) in equal shares to Plaintiffs, David, and two individuals that are not parties to this action. Plaintiff Forrest is Blanche's brother. Plaintiffs Laney and Sandra are Forrest's daughters (Blanche's nieces). Defendant David is Forrest's son (Blanche's nephew).

## Procedural History

Plaintiffs initiated this action against David and Wise Bros. in July 2023. In their First Amended Petition, they asserted five claims of tortious interference with an inheritance expectancy. The claims are as follows:

> Claim 1: David induced Blanche to transfer J.O.'s stock to David.
>
> Claim 2: David and Wise Bros. induced Blanche to invade and deplete the corpus of the J.O. Trust to directly benefit David and Wise Bros.
>
> Claim 3: David and Wise Bros. induced Blanche to transfer Parcel #1 and Parcel #2 to Wise Bros.
>
> Claim 4: David induced Blanche to transfer her stock to David.
>
> Claim 5: David and Wise Bros. induced Blanche to invade and deplete the corpus of the Blanche Trust to directly benefit David and Wise Bros.

We will at times refer to this action as the "tort action" because also pending during this time was an action in the probate division, which was brought by Plaintiffs against David in his capacity as trustee of the trusts ("Probate Matter"). In the Probate Matter, Plaintiffs sought a declaratory judgment that David—in his capacity as trustee—had a duty to provide Plaintiffs with certain information about the trusts and an order requiring him to provide such information. They also alleged David—in his capacity as trustee—breached his duty to provide information, his duty of loyalty, and his duty to distribute the assets of

5

the trusts. They sought the removal of David as trustee and the appointment of a special fiduciary.

In the tort action, Defendants filed a motion to dismiss Plaintiffs' First Amended Petition, asserting four grounds for dismissal: (1) Plaintiffs lacked standing; (2) "Nearly all of" Plaintiffs' claims were time-barred; (3) Plaintiffs' claims failed "as a matter of law because they did not plead and cannot plead that they lack an adequate remedy under probate law, a required element of a tortious interference claim"; and (4) Plaintiffs failed to join necessary and indispensable parties.

The trial court heard argument on the motion, and on October 18, 2023, entered the following docket entry: "After a hearing on 9/18/23, the Court took under advisement Defendants' Motion to Dismiss First Amended Petition. After [d]ue consideration, said Motion to Dismiss is GRANTED. Case is dismissed without prejudice. Each party to bear own costs. This is a final Judgment for purposes of appeal. JHJ/rb" ("2023 Docket Entry").

On November 17, 2023, Plaintiffs filed a "Motion for Leave to Amend the Petition, and Motion to Amend the Judgment, and Motion for New Trial." Attached to the motion was Plaintiffs' proposed Second Amended Petition. The trial court heard argument on the motion, and on January 16, 2024, entered a docket entry denying Plaintiffs' motion.

On January 25, 2024, Plaintiffs filed their notice of appeal with the trial court ("First Notice of Appeal").[3] The notice stated that Plaintiffs were appealing from a judgment

---

[3] Pursuant to Rule 81.04, a party appeals from a judgment by filing a notice of appeal "with the clerk of the trial court," who then "shall transmit to the appellate court clerk a copy of the notice of appeal and all attached documents." *See* Rule 81.04(a), (g).

entered on October 18, 2023. Upon the transmittal of the notice of appeal to this Court, our staff counsel sent correspondence to Plaintiffs advising that a copy of the judgment being appealed from was not included with the notice of appeal, as required.

The following month, the trial court entered a hand-signed Judgment that was dated February 16, 2024 ("2024 Judgment"). The language in the 2024 Judgment was identical to that in the 2023 Docket Entry. On February 19th, Plaintiffs filed the 2024 Judgment in this appeal. On February 21st, staff counsel sent correspondence to all parties advising that, "[a]lthough the judgment has been accepted for filing in this appeal, the notice of appeal identifies the appeal is being taken from an order different than the judgment now provided to the court." On March 22, 2024, Plaintiffs filed another notice of appeal in the trial court ("Second Notice of Appeal"), which stated Plaintiffs were appealing a judgment entered on February 16, 2024. There is no record of the Second Notice of Appeal being transmitted to this Court.[4]

Meanwhile, in the Probate Matter, a bench trial was held on January 31 and February 1, 2024. Judgment was entered in the Probate Matter on the same date as the trial court entered the 2024 Judgment—February 16, 2024. The probate division determined that Plaintiffs failed to sustain their burden to prove their claims, and entered judgment in favor of David in his capacity as trustee. The probate division also made numerous findings, which will be discussed more fully in our analysis, specifically in our discussion of

---

[4] Plaintiffs assert in their reply brief that they "mistakenly assumed that the circuit clerk had done so and failed to confirm a notice of transmittal."

collateral estoppel. Plaintiffs filed a notice of appeal in the Probate Matter on March 22, 2024—the same date that Plaintiffs filed the Second Notice of Appeal with the trial court in this matter.

On April 1st, Plaintiffs filed in this appeal a "Motion to Consolidate," seeking to consolidate this appeal with appeal number "WD87068." Plaintiffs asserted WD87068 was the appeal of the 2024 Judgment, and they were seeking consolidation of WD87068 with the present appeal because they were for "all practical purposes," the same appeal. However, Plaintiffs were incorrect: WD87068 was not the appeal of the 2024 Judgment;[5] WD87068 was the number assigned to the appeal of the Probate Matter. This Court—crediting Plaintiffs' representations in their Motion to Consolidate—granted Plaintiffs' motion and consolidated the appeals.

On July 23, 2024, Plaintiffs filed their brief, asserting six points relied on related to the trial court's dismissal of their First Amended Petition and denial of leave to file a Second Amended Petition in the tort action. None of the points concerned the Probate Matter. On August 2nd, Defendants filed a supplemental legal file, which contained documents filed in the Probate Matter, including the judgment.

On August 20th, Plaintiffs filed a "Motion for Partial Dismissal," requesting this Court dismiss the appeal of the Probate Matter "originally assigned No. WD87068." Plaintiffs stated they appealed the Probate Matter judgment to "challenge certain findings of fact as surplusage (to avoid a future dispute whether those findings were 'necessary'

---

[5] There is no appellate case number associated with Plaintiffs' Second Notice of Appeal; again, there is no record of this Court receiving the Second Notice of Appeal.

determinations with preclusive effect on the Tort Case)," however they "have since determined that this is not a sufficient basis for appeal because an opinion addressing surplus findings would be advisory." Plaintiffs stated they "have abandoned the issue of surplus findings in this consolidated appeal and did not address the [Probate Matter] in their initial Brief." Plaintiffs did not acknowledge or explain the discrepancy between their motion for partial dismissal and their prior motion to consolidate, in which they represented that the two appeals were from the 2023 Docket Entry and 2024 Judgment in this matter.

Two days later, on August 22nd, this Court granted Plaintiffs' motion for partial dismissal and ordered that their "appeal in WD87068 is dismissed." Also on that date, Defendants filed their respondents' brief. One of the arguments raised by Defendants in their brief is that Plaintiffs are "collaterally estopped from asserting their tort claims because of the Probate Division's Judgment" in the Probate Matter.

Thereafter, Plaintiffs filed a "Motion to Strike [Defendants'] Supplemental Legal File." They also filed a motion to strike the "Introduction" section of Defendants' brief. Both motions were taken with the case.

### Our Jurisdiction

We first address our authority to hear this appeal. "This Court has an obligation, acting *sua sponte* if necessary, to determine its authority to hear the appeals that come before it." *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n, Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017). "Absent a final judgment and timely notice of appeal, we are without appellate jurisdiction." *Velder v. Cornerstone Nat'l Ins. Co.*, 243 S.W.3d 512, 519 n.9 (Mo. App. W.D. 2008) (quoting *Volume Servs., Inc. v. C.F. Murphy &*

9

*Assocs., Inc.*, 656 S.W.2d 785, 791 n.2 (Mo. App. W.D. 1983)). In light of these limits on our jurisdiction, we address the effects of the trial court entering both the 2023 Docket Entry and 2024 Judgment, and the fact that the trial court dismissed this action without prejudice.

The trial court purported to enter two final judgments: the 2023 Docket Entry and the 2024 Judgment, which were substantively identical, although the 2024 Judgment contained the judge's handwritten signature and was titled, "Judgment," whereas the 2023 Docket Entry included the judge's typewritten initials. We need not determine, however, which was the final judgment for purposes of our appeal because we would have jurisdiction either way.

If the 2023 Docket Entry was a final judgment, Plaintiffs timely appealed. Although they did not include a copy of the 2023 Docket Entry with their First Notice of Appeal, and instead later filed the 2024 Judgment with this Court, that does not preclude us from deciding the merits of their appeal.[6] *See Southside Ventures, LLC v. La Crosse Lumber Co.*, 574 S.W.3d 771, 781 (Mo. App. W.D. 2019) (Although Rule 81.04(a) requires the notice of appeal to specify the judgment or order appealed from, "technical adherence to the formal averments of a notice of appeal is not jurisdictional," and "the spirit of the rules

---

[6] If the 2023 Docket Entry was a final judgment, the trial court would not have had jurisdiction over this matter when it entered the 2024 Judgment. The 2023 Docket Entry would have become final on January 16, 2024, when the trial court overruled Plaintiffs' after-trial motions. *See* Rule 81.05(a)(2)(B). After that date, the trial court would have lost authority to enter a subsequent judgment. *See State ex rel. AJKJ, Inc. v. Hellmann*, 574 S.W.3d 239, 242 (Mo. banc 2019) ("Except as authorized by law, a circuit court loses jurisdiction over a case when a judgment becomes final," and thereafter "any attempt by the trial court to continue to exhibit authority over the case, whether by amending the judgment or entering subsequent judgments, is void.").

is to sustain an appeal which is actually an attempt in good faith to appeal from a final judgment." (internal marks omitted)).

If the 2023 Docket Entry was not a final judgment, and thus the 2024 Judgment was the final operative judgment, we would treat Plaintiffs' First Notice of Appeal as prematurely filed under Rule 81.05(b), which provides that, "In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for purpose of appeal." *See Southside Ventures*, 574 S.W.3d at 782 (treating an appeal from a judgment that was subsequently amended as a premature appeal under Rule 81.05(b)). Thus, we find this appeal timely filed.

Next, we turn to the trial court's dismissal without prejudice. "This raises a question of whether the judgment is final and appealable . . . because this Court occasionally has referred to a general rule that a dismissal without prejudice is not a final judgment and, therefore, is not appealable." *Naylor Senior Citizens Hous., LP v. Sides Constr. Co., Inc.*, 423 S.W.3d 238, 242-43 (Mo. banc 2014) (internal marks omitted) (noting that "[i]t is unclear to what extent, if any, this 'general rule' ever was followed," and over time "exceptions seemed to have swallowed all or nearly all of whatever rule once might have existed"). However, even if we were to apply this "general rule," we would find the trial court's dismissal without prejudice was a final and appealable judgment.

One recognized exception to the "general rule" "permits appeal where 'the effect of the trial court's ruling is to dismiss a plaintiff's action and not merely the pleading.'" *Ryno v. Hillman*, 641 S.W.3d 385, 387 n.1 (Mo. App. S.D. 2022) (quoting *Siebert v. Peoples Bank*, 632 S.W.3d 461, 465 (Mo. App. S.D. 2021)). "Stated another way, if the dismissal

11

was such that refiling of the petition at that time would have been a futile act, then the order of dismissal is appealable." *Siebert*, 632 S.W.3d at 465. "Another exception is where the dismissal has the practical effect of terminating the litigation in the form cast or in the plaintiff's chosen forum." *State v. Buckner*, 566 S.W.3d 261, 265 (Mo. App. W.D. 2018) (internal marks omitted).

We find these two exceptions applicable here. It is apparent from the record that the trial court dismissed Plaintiffs' action, not merely their petition. And the trial court's dismissal had the practical effect of terminating the litigation in Plaintiffs' chosen forum— the trial court as opposed to the probate division.[7] Therefore, even if we were to apply the rule that a dismissal without prejudice generally does not constitute a final judgment, we would nonetheless find the trial court's dismissal here was a final and appealable judgment. *See Ryno*, 641 S.W.3d at 387 n.1; *Siebert*, 632 S.W.3d at 465-66.

We now turn to the merits of Plaintiffs' claims on appeal.

## Standard of Review

"The standard of review for a trial court's grant of a motion to dismiss is *de novo*." *Progress Mo., Inc. v. Mo. Senate*, 494 S.W.3d 1, 4 (Mo. App. W.D. 2016). "*De novo* review means that we will consider the merits of the motion to dismiss under the same standard that applied to the circuit court when it considered the issue." *Bugg v. Rutter*, 330 S.W.3d

---

[7] Although the trial court did not specify that it was dismissing the matter without prejudice so that Plaintiffs could re-file their action in the probate division, we note that, at the hearing on the motion to dismiss, defense counsel argued that the "proper remedy" was for the case to be dismissed without prejudice so that Plaintiffs could "bring their case" in the "forum where it should be"— probate court.

12

148, 152 (Mo. App. W.D. 2010). "If the petition sets forth any facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Progress Mo., Inc.*, 494 S.W.3d at 4. "We will affirm the dismissal if it was appropriate on any ground supported by the motion to dismiss." *Id.*

Rule 67.06 provides that, on sustaining a motion to dismiss a claim, the court shall freely grant leave to amend the petition. "We review a trial court's denial of leave to amend for abuse of discretion." *World Wide Tech., Inc. v. Office of Admin.*, 572 S.W.3d 512, 521 (Mo. App. W.D. 2019).

**Analysis**

Because Defendants moved for dismissal on four grounds, and the trial court granted their motion to dismiss without stating its basis, we address each ground asserted in the motion. We also address two issues raised on appeal that were not raised in the motion to dismiss: whether Plaintiffs' First Amended Petition stated a claim for civil conspiracy, and whether the judgment in the Probate Matter collaterally estops Plaintiffs' claims of tortious interference.

*Failure to State a Claim*

Defendants asserted in their motion to dismiss that Plaintiffs failed to state a claim upon which relief can be granted, contending Plaintiffs' claims failed "as a matter of law because they did not plead and cannot plead that they lack an adequate remedy under probate law, a required element of a tortious interference claim." However, we find that no adequate remedy under probate law exists for certain of Plaintiffs' claims, and thus those claims should not have been dismissed for failure to state a claim.

13

A claim of tortious interference with an inheritance expectancy is described in the Restatement of Torts as: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." Restatement (Second) of Torts § 774B Intentional Interference with Inheritance or Gift (1979). Missouri first recognized this tort in 1988, when the Southern District of this Court—after reviewing the Restatement and other jurisdictions which had allowed such claims—held that, "the beneficiary of a revocable written trust has a cause of action, at least after the death of the settlor, against a person who, by the exercise of undue influence induces a settlor to revoke the trust and thereby diverts all or part of the trust funds and prevents the beneficiary from receiving that which he would otherwise have received." *Hammons v. Eisert*, 745 S.W.2d 253, 258 (Mo. App. S.D. 1988). This tort claim is not limited to the narrow holding of *Hammons*, however. For example, in *Commerce Bank, N.A. v. Blasdel*, the beneficiaries of a family trust stated a claim for tortious interference against stepchildren that were adopted as adults, under the theory that the stepchildren fraudulently induced the adoptions to deprive the beneficiaries of entitlements under the trust. 141 S.W.3d 434, 456 (Mo. App. W.D. 2004) (en banc).

In cases subsequent to *Hammons*, Missouri courts have clarified that a claim for tortious interference is only available if the plaintiff first tries to obtain a remedy in probate court or shows that it is impossible to obtain an adequate remedy in a probate action. *See, e.g.*, *McMullin v. Borgers*, 761 S.W.2d 718, 720 (Mo. App. E.D. 1988) (Where "a will contest provides essentially the same remedy and prevents any additional damages, we

14

hold that an action for tortious interference will not lie."); *Brandin v. Brandin*, 918 S.W.2d 835, 840 (Mo. App. E.D. 1996) ("We believe the court's policy behind requiring plaintiffs to seek redress through other available and adequate forums, as it does with respect to wills in the probate court, correctly and logically extends to requiring plaintiffs to seek redress through courts of equity for challenges to express trusts."); *see also Graham v. Manche*, 974 S.W.2d 580, 583 (Mo. App. E.D. 1998) ("If a plaintiff fails to either attempt recovery in probate or show that it is impossible to recover in probate, a subsequent tort action in a non-probate division of the circuit court is considered a collateral attack upon the authority and jurisdiction of the probate division; and which is strictly forbidden."); *Blasdel*, 141 S.W.3d at 456 (allowing claim of tortious interference because "it cannot be said that the trust construction process [in probate court] would have provided essentially the same remedy as that available in an action for tortious interference with inheritance expectancy"). This limit on a tortious interference claim reflects a balance "between the desire to fairly compensate an injured party and the need to preserve the goals of the probate code which purports to provide the exclusive forum for" matters relating to probate and the administration of trusts.[8] *McMullin*, 761 S.W.2d at 719.

Thus, here, in determining whether Plaintiffs have a claim for tortious interference, we must decide whether they have an adequate remedy in probate court. We conclude that the probate court could have provided an adequate remedy for Plaintiffs' claims relating to

---

[8] Section 472.020 provides that "[t]he probate division of the circuit court may hear and determine all matters pertaining to probate business . . . and . . . the administration of testamentary and inter vivos trusts . . . ." All statutory references are to RSMo 2016.

15

the J.O. Trust assets, but not for their claims relating to the Blanche Trust assets or her personal property.

Remedies available to trust beneficiaries under the Missouri Uniform Trust Code ("MUTC")[9] include removal of a trustee or suing the trustee for breach of trust. *See* § 456.7-706; § 456.10-1001. To remedy a breach of trust, the probate court may "compel the trustee to redress a breach of trust by paying money, restoring property, or other means," § 456.10-1001.2(3), or may "void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds," § 456.10-1001.2(9). Certain of Plaintiffs' tortious interference claims allege that David induced Blanche—in her capacity as trustee of the J.O. Trust—to transfer assets from the J.O. Trust to Defendants. Relating to these claims, Plaintiffs allege Blanche breached her duties as trustee of the J.O. Trust and exceeded the scope of her powers as trustee of the J.O. Trust. Plaintiffs, as beneficiaries, could have brought an action for breach of trust against Blanche as trustee of the J.O. Trust, and if they were successful, the probate court could have compelled Blanche to repay the money transferred, voided the acts of Blanche, imposed a lien or constructive trust on trust property, or recovered the property or its proceeds. *See* § 456.10-1001.2(3), (9). To that

---

[9] The MUTC became effective January 1, 2005, and "generally applies to all trusts created before, on, or after January 1, 2005, and to all judicial proceedings concerning trusts commenced on or after that date." *In re Stephen M. Gunther Revocable Living Tr.*, 350 S.W.3d 44, 45 (Mo. App. E.D. 2011).

16

end, Plaintiffs had an adequate remedy in the probate court for their claims relating to the J.O. Trust assets.[10]

These remedies, however, were not available for Plaintiffs' claims relating to the assets of the Blanche Trust. While Blanche was alive, the Blanche Trust was revocable. "While a trust is revocable and the settlor has the capacity to revoke the trust, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor." § 456.6-603.1. Thus, "while a settlor has capacity to revoke a trust, he or she is treated as the sole beneficiary," and the trustee has no duty to any other beneficiary. *In re Stephen M. Gunther Revocable Living Tr.*, 350 S.W.3d 44, 46 (Mo. App. E.D. 2011). As a result, after J.O. died and while Blanche was alive, she was the settlor, trustee, and effectively the sole beneficiary of the Blanche Trust. She owed no duty to any other beneficiary, and thus she owed no duty to Plaintiffs. Therefore, Plaintiffs had no adequate remedy in probate court relating to the Blanche Trust assets because Plaintiffs could not challenge Blanche's actions as trustee of the Blanche Trust. *See id.* at 47; *cf.* § 456.10-1001.1 (A "breach of trust" is "[a] violation by a trustee of a duty the trustee owes to a beneficiary.").

---

[10] It is of no import to our analysis that it may now be too late for Plaintiffs to seek recovery from Blanche or her estate. *See Brown v. Kirkham*, 23 S.W.3d 880, 885 (Mo. App. W.D. 2000) (fact that the plaintiff's will contest in probate court was dismissed as untimely did not negate the availability of an adequate remedy in probate court: an "adequate remedy" refers "to the availability of a procedure under the probate code capable of providing full relief as to the issues between the parties and does not refer to whether a party is ultimately successful in obtaining the results desired"); *Gianella v. Gianella*, 234 S.W.3d 526, 530 (Mo. App. E.D. 2007) (In determining whether a plaintiff has an "adequate remedy" in probate court, "[i]t is inconsequential whether the party is ultimately successful in obtaining the results desired" in the probate court.).

Similarly, Plaintiffs had no adequate remedy in probate court relating to personal property owned by Blanche outside of her trust; specifically, Blanche's shares of Wise Bros. stock. Although the original stock certificate provided that Blanche's stock was transferrable on her death to her trust, she cancelled that certificate and transferred her stock to David before she died; therefore, the stock was never an asset of the Blanche Trust.

As described above, Plaintiffs had an adequate remedy in probate court relating to the J.O. Trust assets. Plaintiffs, therefore, failed to state a claim for tortious interference relating to these assets. *See Brandin*, 918 S.W.2d at 840. Claims relating to the J.O. Trust assets were properly dismissed.

However, Plaintiffs did not have an adequate remedy in probate court relating to Blanche's personal property or the assets of the Blanche Trust. Although Plaintiffs did not specifically allege this lack of adequate probate remedy in their First Amended Petition, they did in their proposed Second Amended Petition.[11] Plaintiffs alleged that the interference with the Blanche Trust assets "occurred while the Blanche Trust was revocable and while Blanche had capacity to revoke the Blanche Trust; therefore the interference occurred while no duties were owed from the trustee of the Blanche Trust to any plaintiff with respect to" this property, and Plaintiffs did not have "standing to bring a claim for relief in probate court" relating to this property. They also alleged that the "interference with the Blanche Stock Expectancy . . . occurred while Blanche owned the Blanche Stock

_____

[11] Plaintiffs assert on appeal that they were not required to plead the impossibility of obtaining an adequate remedy in probate court because that is not an element of a tortious interference claim. Alternatively, they argue that if they were required to plead this element, they did so in their proposed Second Amended Petition.

18

in her individual capacity, outside of any trust; and the Blanche Stock has never been subject to the terms of the Blanche Trust Instrument or any other trust instrument; therefore, no plaintiff possesses standing to bring a claim for relief in probate court" relating to Blanche's stock. These allegations sufficiently plead that it is impossible for Plaintiffs to obtain an adequate remedy in a probate action. Thus, we find Plaintiffs should be allowed to proceed on their tortious interference claims relating to the Blanche Trust assets and Blanche's property. *See* Rule 67.06 ("On sustaining a motion to dismiss a claim . . . the court shall freely grant leave to amend . . . ."); Rule 55.33(a) (leave to amend shall be freely given when justice so requires).

*Standing*

Defendants also asserted in their motion to dismiss that Plaintiffs—as beneficiaries—lacked standing to bring tort claims against third parties on behalf of the trusts. However, we find Plaintiffs had standing to assert tort claims relating to Blanche's personal property and her trust assets, and thus those claims should not have been dismissed for lack of standing.

The crux of Defendants' lack-of-standing argument is their assertion that, as a "general rule, a beneficiary may not bring an action at law on behalf of a trust against a third party," as "[t]he right to bring such an action belongs to the trustee." But Defendants mischaracterize Plaintiffs' tortious interference claims: Plaintiffs are not bringing this action *on behalf of* the trusts, they are three individuals bringing tort claims in their individual capacities. Although Defendants rely on *Wagoner v. ConocoPhillips*, 527 S.W.3d 83, 87 (Mo. App. S.D. 2017), Plaintiffs here are unlike the claimant in *Wagoner*,

19

who brought his claim "on behalf of" the Missouri Petroleum Storage Tank Insurance Fund, and who it was determined did not have standing to bring such a claim.[12] Defendants also assert Plaintiffs lack standing because "[n]o provision of the Missouri Uniform Trust Code authorizes beneficiaries to sue third parties on a trust's behalf." We reiterate that Plaintiffs are not bringing their tort claims "on behalf of" the trusts. To hold otherwise would be inconsistent with our decision in *Blasdel*, in which we found trust beneficiaries had standing to assert tortious interference claims against individuals they claimed deprived them of their entitlements under the trust. 141 S.W.3d at 454-56.

Accordingly, to the extent that the trial court dismissed Plaintiffs' claims for lack of standing, we find such dismissal was erroneous. Plaintiffs' tortious interference claims relating to the Blanche Trust assets and her personal property should not have been dismissed for lack of standing.

*Statute of Limitations*

Defendants also moved for dismissal on the grounds that "[n]early all of Plaintiffs' claims are time-barred," citing the five-year statute of limitations in section 516.120(4) (a five-year statute of limitation applies to actions for "taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property"). Defendants asserted that any of Plaintiffs' claims seeking to recover personal (as opposed to real)

---

[12] The claimant in *Wagoner* asserted that the Missouri Petroleum Storage Tank Insurance Fund "is a special statutory trust to which he is a beneficiary, giving him standing to sue for reimbursement from [ConocoPhillips] on behalf of the Fund." 527 S.W.3d at 87. The Southern District rejected this argument. *See id.*

20

property or damages for the taking of personal property are barred if they occurred before July 11, 2018 (Plaintiffs initiated this action on July 11, 2023).

Plaintiffs agree that the five-year statute of limitations set forth in section 516.120(4) applies, but assert that the statute of limitations did not begin to run until the date Blanche died—May 20, 2022. They contend their claims are not time-barred because they initiated this action within five years of Blanche's death. We agree.

"To determine whether a statute of limitation bars recovery, it is necessary to establish when the cause of action accrued." *Boland v. Saint Luke's Health Sys., Inc.*, 471 S.W.3d 703, 710 (Mo. banc 2015). "A cause of action accrues, and the limitation period begins to run, when the right to sue arises." *Id.*

Plaintiffs' right to sue Defendants for tortious interference with an inheritance expectancy did not arise until Blanche died. In *Hammons v. Eisert*, the Southern District held that the beneficiary of a revocable trust had a cause of action for tortious interference "at least after the death of the settlor." 745 S.W.2d at 258. And in *Brown v. Kirkham*, we held that the plaintiff's "action for the interference of an expectancy of inheritance was premature at the time of plaintiff's filing" because the testator was still alive. 926 S.W.2d 197, 200 (Mo. App. W.D. 1996). We determined that, while the testator lived, the plaintiff had no vested interest in the testator's property, and was at most an "heir expectant" with only the possibility of inheritance. *Id.* Accordingly, while the testator was alive, the plaintiff "had not suffered any legally compensable loss." *Id.*[13]

---

[13]Although the statute of limitations was not an issue raised in *Commerce Bank, N.A. v. Blasdel*, we note that in that case, we found beneficiaries had a claim for tortious interference based on

21

Similarly, here, Plaintiffs—beneficiaries of a revocable trust—did not suffer any legally compensable loss until Blanche died. They could not have brought their tort claims relating to her property or the property of the Blanche Trust until after her death. Thus, their tort causes of action did not accrue until May 20, 2022. They initiated this action within five years of that date, and thus their claims are not time-barred. To the extent the trial court dismissed Plaintiffs' claims on the ground that they were barred by the statute of limitations, such dismissal was erroneous.

*Failure to Join Parties*

Defendants also moved for dismissal on the ground that Plaintiffs failed to join necessary and indispensable parties: two other beneficiaries to the trusts. If the trial court dismissed on this basis, we find the dismissal was erroneous.

Rule 52.04 governs the joinder of parties needed for adjudication. "In determining whether an action must be dismissed for failure to join a party, the trial court must apply the provisions of Rule 52.04." *Ward v. Bank Midwest, NA*, 871 S.W.2d 649, 651 (Mo. App. W.D. 1994). Pursuant to this Rule, "the court must first determine if the person not joined is necessary to the action." *Id.* If the person is necessary and has not been joined, "the court shall order that the person be made a party." Rule 52.04(a). If a necessary party cannot be joined, "[t]he court must decide if the person is indispensable by considering" factors listed

---

fraudulently induced adoptions of adult stepchildren. 141 S.W.3d at 454-59. The adoptions occurred in the 1970s, and the beneficiaries did not bring their claim against the stepchildren until after their father died in 2000. *Id.* at 439, 441.

22

in Rule 52.04(b). *Ward*, 871 S.W.2d at 651. "Only if the person is determined to be indispensable and cannot be joined should the action be dismissed." *Id.*

"The failure of a trial court to follow the procedures in Rule 52.04 to make the proper determinations before granting a dismissal is grounds for reversing the trial court's order." *Id.*; *see also Crumbaker v. Zadow*, 151 S.W.3d 94, 98 (Mo. App. E.D. 2004) ("The failure to follow this mandatory procedure and make the required determinations is reversible error."). Here, the trial court did not make any determinations under Rule 52.04. If the trial court's dismissal was based on Plaintiffs' failure to join necessary and indispensable parties, the dismissal cannot stand without the trial court first engaging in the Rule 52.04 determination and making the requisite findings.[14]

Accordingly, to the extent that the trial court dismissed Plaintiffs' claims for failure to join necessary and indispensable parties, we find such dismissal was erroneous, as the trial court failed to follow the procedures of Rule 52.04.

### Civil Conspiracy

Plaintiffs assert the trial court erred in granting Defendants' motion to dismiss in that Plaintiffs "alleged facts in the First Amended Petition that met the elements of a cause of action for civil conspiracy."[15] Plaintiffs contend that—in the alternative to their tortious

---

[14] We express no opinion as to whether the two un-joined beneficiaries are necessary or indispensable parties.

[15] While none of Plaintiffs' claims in the First Amended Petition were titled or denominated "civil conspiracy," "whether [the plaintiff] stated a claim is not determined by the title of its purported claims, but by the facts alleged," and "the fact that the title of the count does not match the cause of action alleged is insufficient to cause the count to be dismissed." *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 592 (Mo. App. E.D. 2008). However, we do not encourage this practice of failing

interference claims relating to the J.O. Trust assets—they stated facts alleging David and Blanche conspired to breach the J.O. Trust. However, we find Plaintiffs failed to state a claim for civil conspiracy because they only brought their claim against one alleged co-conspirator.

"Although civil conspiracy has its own elements that must be proven, it is not a separate and distinct action." *Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 324 (Mo. banc 2014). "Rather, it acts to hold the conspirators jointly and severally liable for the underlying act." *Id.* (internal marks omitted). "The doctrine of joint and several liability allocates the financial burden of harm among multiple parties at fault for the plaintiff's injuries." *Id.* "Joint and several liability depends on the existence of two or more defendants." *Id.* "Since the only effect of a claim of civil conspiracy is to hold multiple defendants jointly and severally liable," a civil conspiracy claim against just one defendant cannot survive. *See id.* at 25 (dismissing as moot the plaintiff's civil conspiracy claim because during the pendency of the appeal, the plaintiff voluntarily dismissed its claims against all defendants but one); *see also GP3 II, LLC v. Bank of the West*, No. 20-00424-CV-W-BP, 2024 WL 4406952, at *11 (W.D. Mo. July 23, 2024) (applying Missouri law and finding that because "only one conspirator is left in this case, . . . a civil conspiracy claim serves no purpose because one individual or entity cannot be held jointly and severally liable"); *Hanover Ins. Co. v. First Midwest Bank of Poplar Bluff*, No. 1:20-CV-192-ACL, 2022 WL 2208945, at *5-7 (E.D. Mo. June 21, 2022) ("Missouri law requires

---

to accurately label causes of action. *See id.* (the plaintiff's "failure to accurately title counts is frustrating and compounds the overall poor quality of its petition").

24

that a plaintiff seeking to recover under a civil conspiracy theory must sue at least two members of the alleged conspiracy," and because the plaintiff only sued one alleged conspirator, its "civil conspiracy claim fails to state a claim under Missouri law, and will be dismissed.").

Here, Plaintiffs have only brought their claim for civil conspiracy against one alleged co-conspirator: David. They have not asserted—and now cannot assert—such a claim against Blanche, his sole alleged co-conspirator. *See* § 473.444.1 ("claims against the estate of a deceased person . . . which are not filed in the probate division, or are not paid by the personal representative, shall become unenforceable and shall be forever barred against the estate . . . one year following the date of the decedent's death"). Because the "only effect of a claim of civil conspiracy is to hold multiple defendants jointly and severally liable," and Plaintiffs have only named one co-conspirator as a defendant, they have failed to state a claim for civil conspiracy. *See Cent. Tr. & Inv. Co.*, 422 S.W.3d at 325; *see also Hanover Ins. Co.*, 2022 WL 2208945, at * 7.

In arguing that they may bring a civil conspiracy claim against just one co-conspirator, Plaintiffs rely on *Luebbering v. Varia*, in which the Eastern District held that an action for civil conspiracy may be maintained against only one of the co-conspirators. 637 S.W.3d 366, 371 (Mo. App. E.D. 2021). However, given the conflict between *Luebbering* and the Supreme Court's decision in *Central Trust and Investment*, we follow the Supreme Court's guidance. *See also GP3 II*, 2024 WL 4406952, at *11 n.23 (declining to follow *Luebbering* on the basis that the "case did not discuss or distinguish—and ultimately conflicts with—*Central Trust*").

25

For this reason, we find the trial court did not err in dismissing any civil conspiracy claims asserted by Plaintiffs.

*Collateral Estoppel*

Defendants argue we should affirm the trial court's judgment of dismissal in its entirety because Plaintiffs "are collaterally estopped from asserting claims premised on Blanche's actions, in her individual capacity and as trustee of the Trusts, by the Probate Division's Judgment." We decline to decide the merits of this argument.

"Collateral estoppel, or issue preclusion, is used to preclude the relitigation of an issue that has already been decided in a different cause of action." *Brown v. Carnahan*, 370 S.W.3d 637, 658 (Mo. banc 2012). "The doctrine requires that the issue was fully and fairly litigated, that the issue was essential to the earlier judgment, and that the earlier judgment be final and binding on the party against whom it is asserted." *Id.* at 658-59.

The claims asserted by Plaintiffs in the Probate Matter concerned David's actions as trustee of the trusts. A trial was held, at the conclusion of which the probate court ruled in favor of David in his capacity as trustee, finding "Plaintiffs have failed to sustain their burden a[s] to all Claims." The probate court entered its judgment, making numerous findings, including that "none of the gifts, payments, transfers or sale of assets referenced in the evidence were in any way improper, ultra vires or otherwise the product of anything other than Blanche Wise's informed, competent, and appropriate discretion."

Defendants assert on appeal that findings such as this one "are directly contrary to the allegations" of Plaintiffs' tort claims in this action, and as a result, Plaintiffs are collaterally estopped from asserting their tort claims. Plaintiffs respond that many of the

26

findings in the probate judgment "exceed[ed] the determinations required to dispose of the case"—in other words, they were surplusage—and thus they have no preclusive effect. *See Lynch v. Hurley*, 569 S.W.3d 33, 40 (Mo. App. W.D. 2019) ("gratuitous conclusions in a judgment do not preclude relitigation of the same issue in a different cause of action"); *see also Autumn Ridge Homeowners Ass'n, Inc. v. Occhipinto*, 311 S.W.3d 415, 420 (Mo. App. W.D. 2010) ("A conclusion that exceeds the determination required to dispose of a claim is considered gratuitous surplusage.").

We decline to resolve this issue on appeal. The probate judgment was entered—and thus this issue of collateral estoppel arose—after the trial court dismissed the First Amended Petition in this action and denied Plaintiffs leave to file a Second Amended Petition. Moreover, some of the probate judgment's findings refer to evidence that was presented at trial, and we have not been provided with a trial transcript. A review of the trial transcript may provide insight into the issues decided by the probate judgment. *See Occhipinto*, 311 S.W.3d at 419 ("When there is confusion arising out of the superfluous wording of a judgment, resort may be had to the record to determine the true mandate of the judgment."). Accordingly, we believe the question of collateral estoppel can be best decided by the trial court upon remand.

27

## Conclusion[16]

The trial court's judgment granting Defendants' motion to dismiss is affirmed in part and reversed in part. We remand for further proceedings consistent with this opinion.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

---

[16] Plaintiffs' Motion to Strike Respondents' Supplemental Legal File and Motion to Strike Respondents' 'Introduction' Section of Brief are denied.