

# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| CARY SHIPPERT, | ) | |
| | ) | WD87482 |
| Appellant, | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| TERRY SHIPPERT, ET AL, | ) | June 17, 2025 |
| | ) | |
| Respondents. | ) | |
| | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable David P. Chamberlain, Judge**

**Before Division Three:  Edward R. Ardini, Jr., Presiding Judge,**
**Alok Ahuja, Judge, and Thomas N. Chapman, Judge**

Cary Shippert ("Cary") brought this trust contest against Terry Shippert ("Terry"),

Shari Pitts, Bryon Shippert, and Sarah Lawrence (collectively "Defendants") challenging

the validity of the trust of Betty L. Shippert ("Decedent") on the basis of incapacity and

undue influence.[1]  The trial court granted Defendants summary judgment and dismissed

the amended petition, finding that Cary lacked standing because he would not derive any

benefit from the invalidation of the trust where he stood to receive the exact same

---

[1] Because many of the parties have the same last name, this memorandum will refer to some of
them by their first names for ease of reading.  No familiarity or disrespect is intended.

distribution of assets whether the trust was invalidated or not based on a provision in Decedent's will incorporating the terms of the trust if the trust is invalidated. In two points on appeal, Cary contends that the trial court erred in ruling that the provision of the will incorporating the terms of the trust controlled distribution of the estate even if the trust itself was void due to undue influence because the provision in the pour-over will devising estate assets to a trustee of a voided trust would lapse under section 456.021, RSMo 2016, and because such a ruling was against public policy. The judgment is affirmed.

## Factual and Procedural Background

The facts are undisputed. On June 12, 2020, Decedent executed her Last Will and Testament ("Will"). She also executed the Betty L. Shippert Trust dated June 12, 2020 ("Trust"). The Trust names one of her sons, Terry, as successor trustee. It provides for distribution of the family farm in fee simple to Terry. It further provides that the balance of the Trust shall be divided into equal shares for each of the living children and each of the deceased children with living descendants. Under the Will, the residuary beneficiary of Decedent's estate is the currently serving trustee of the Trust.

Decedent died March 29, 2022. She was survived by three living children—two sons, Cary and Terry, and a daughter, Shari Pitts. Decedent was predeceased by her husband and one son, who had two living descendants—Sarah Lawrence and Bryon Shippert. On May 20, 2022, the Trust made a partial distribution to Cary in the amount of $25,000, and Cary accepted and acknowledged receipt of the partial distribution.

On July 5, 2022, Terry filed an application of letters testamentary along with the Will in the Probate Division of the Circuit Court of Clay County ("probate court") in estate number 22CY-PR00602. The same day, the probate court entered a certificate and order of probate of last will and testament (self-proving) wherein it admitted the Will to probate. On July 6, 2022, the probate court issued letters testamentary appointing Terry as independent personal representative of Decedent's estate. Notice of letters testamentary granted was published in The Courier-Tribune on July 14, July 21, July 28, and August 8, 2022. On August 10, 2022, an affidavit of publication of said notice was filed with the probate court.

The six-month period following the first publication of the notice of letters testamentary granted expired on January 14, 2023. During the six-month period, no other will of Decedent was presented to probate. There was no verified statement setting forth that any will of Decedent was lost, destroyed, suppressed or otherwise not available, the reason such will was not available, or the provisions of such will filed in probate during the period. There was no petition filed contesting the validity of the Will admitted to probate.

On October 24, 2022, Cary filed the instant action in the Circuit Court of Clay County. On March 9, 2023, he filed his amended petition contesting the validity of the Trust based on allegations that Decedent lacked capacity and was unduly influenced to execute the Trust. Cary's petition (although filed within the six-month period following the first publication of the notice of letters testamentary granted) did not contest the

validity of the Will.

Defendants filed a motion for summary judgment on May 29, 2024, asserting, in relevant part, that Cary lacked standing to challenge the Trust because he did not have an actual and justiciable interest to be protected in the litigation. Specifically, they argued that even if Cary were successful in his action to set aside and invalidate the Trust, Decedent's binding Will expressly directed all probate assets to be administered according to the terms of the challenged Trust.

Following Cary's response to the motion for summary judgment, the trial court entered summary judgment in favor of Defendants and dismissed the amended petition on July 30, 2024. It found that Cary did not have standing to contest the Trust because he did not have a legally protectable interest at stake as he stood to receive the exact same distribution of assets whether the Trust was invalidated or not.

This appeal by Cary followed.

## Standard of Review

Appellate review of the trial court's grant of summary judgment is *de novo*. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). The appellate court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is proper if the moving party is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* The record is reviewed in the light most favorable to the party against whom judgment was entered, and that party

is entitled to the benefit of all reasonable inferences that may be drawn from the evidence. *Id.*

### Points on Appeal

Cary raises two points on appeal challenging the trial court's summary judgment and dismissal of his amended petition based on lack of standing. Specifically, he asserts that the trial court erred in ruling that a provision in Decedent's Will incorporating the terms of the Trust controlled distribution of the estate even if the Trust itself was void due to undue influence. In point one, he argues that under section 456.021, the provisions in the Will devising estate assets to the trustee would lapse if the Trust were voided. In point two, he argues that the trial court's ruling was against public policy. The points are addressed together.

"A justiciable controversy exists where [1] the plaintiff has a legally protectable interest at stake, [2] a substantial controversy exists between parties with genuinely adverse interests, and [3] that controversy is ripe for judicial determination." *Schweich v. Nixon*, 408 S.W.3d 769, 773-74 (Mo. banc 2013) (internal quotes and citations omitted). "The first two elements of justiciability are encompassed jointly by the concept of 'standing.'" *Id.* at 774. "Standing requires that a party have a personal stake arising from a threatened or actual injury." *Id.* (internal quotes and citations omitted). "The issue is whether plaintiff has a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief." *Id.* at 775 (internal quotes and citation omitted). "A party establishes standing, therefore, by showing that it has some legally

**5**

protectable interest in the litigation so as to be directly and adversely affected by its outcome." *Id.* (internal quotes and citations omitted).

Section 456.021 permits pour-over wills. *Ivie v. Smith*, 439 S.W.3d 189, 208 n.18 (Mo. banc 2014); *Laws v. Allen*, 697 S.W.3d 834, 840 n.4 (Mo. App. S.D. 2024). "A pour-over will permits a settlor who has created an *inter vivos* trust to add property to that trust, by will at death, to be held, administered, and distributed in accordance with the terms of the trust." *Laws*, 697 S.W.3d at 840 n.4. The statute provides:

> A devise or other transfer, the validity of which is determinable by the law of this state, may be made by a will…to the trustee or trustees of a trust established or to be established by the testator…if the trust is identified in the testator's will…and its terms are set forth in a written instrument. The devise or transfer shall not be invalid because the trust is amendable or revocable, or both, or because the trust was amended after the execution of the will, the delivery of the instrument of transfer, or the death of the testator….Unless the testator's will or the instrument of transfer provides otherwise, the property so devised:
>
> (1) Shall not be deemed to be held under a testamentary trust of the testator or transferor but shall become part of the trust to which it is given; and
>
> (2) Shall be administered and disposed of in accordance with the provisions of the instrument or will setting forth the terms of the trust….*A revocation or termination of the trust before the death of the testator shall cause a devise to the trustees of that trust to lapse.*

§ 456.021 (emphasis added). Cary is correct that under section 456.021(2), if an *inter vivos* trust is revoked or terminated before the death of the testator, a devise to the trustees of that trust lapses. "Logically, if a devise to a revoked or terminated trust lapses, so would a devise to a failed trust, *ab initio*…." *Estate of Corbin*, 66 S.W.3d 84, 91 (Mo. App. W.D. 2001). Thus, if a trust is declared invalid, the residuary estate would

**6**

generally pass to the testator's survivors under the laws of descent and distribution as an intestate estate. *Id.*

Decedent's Will contains a pour-over clause providing that the remainder of Decedent's estate after certain bequests would be transferred to the Trust for disposition. The clause provides:

> I give, devise and bequeath all of the rest, residue and remainder of my property and estate, real, personal and mixed, of whatsoever kind and wheresoever situated, of which I shall die seized or possessed, or of which I shall be entitled to dispose at the time of my death (all of such property being hereinafter referred to as my residuary estate) to TERRY G. SHIPPERT, as Successor Trustee, under that certain Trust Agreement dated June 12, 2020, between myself, as Grantor, and myself, as Trustee, and to the substitutes and successors under such agreement, to be added to and held, managed, invested, reinvested and distributed as a part of the trust estate created thereunder upon all the terms, trusts and conditions thereafter pertaining thereto including any amendments thereof made at any time prior to my death.

However, Decedent's Will also expressly provides for the creation of a testamentary trust to guard against possible partial intestacy resulting from invalidation of the Trust. The Will provides:

> If for any reason the said trust shall not be in existence at the time of my death, or if for any reason a court of competent jurisdiction shall declare the foregoing testamentary disposition to the Trustees under such Trust Agreement as it exists at the time of my death to be invalid, then I give, devise and bequeath all of said rest, residue and remainder of my property and estate to TERRY G. SHIPPERT, as Trustee, and to their substitutes or successors under the Trust Agreement, described hereinabove, to be held, managed, invested and distributed by the Trustee upon the terms, trusts and conditions pertaining to the period beginning with the date of my death as are now contained in such Trust Agreement; and for that purpose I do hereby incorporate such instrument of trust by reference into this my Last Will and Testament.

This provision creates a separate testamentary trust with the same terms as the *inter vivos* Trust and incorporates the Trust by reference into the Will in the event that the Trust itself is no longer in existence at the time of Decedent's death or is invalidated. *See Rosenblum v. Gibbons*, 685 S.W.2d 924, 929 (Mo. App. E.D. 1984) (even if trust was invalid as an *inter vivos* trust, it would have been a valid testamentary trust by reason of incorporation by reference in grantor's will, which devised entirety of grantor's estate, except for certain personal property, to trustee named in simultaneously executed trust indenture and which expressly provided against possible contingency of disposition of trust as intestate property). Even if the Trust is invalidated, all assets in the Trust would revert to Decedent individually and, thereafter, the assets would be administered according to her Will. As set forth above, the Will provides that if the Trust is invalidated, the personal representative is directed to distribute the estate assets to the trustee of the invalidated Trust to hold, manage, invest, and distribute upon the terms, trusts, and conditions contained in the Trust, which is incorporated by reference into the Will. Thus, the beneficiaries of the Trust, including Cary, would receive the same distribution of assets under the Will if the Trust is invalidated.

While Cary sought to invalidate the Trust, he did not contest the validity of the Will. "A will, to be effective as a will, must be presented for and admitted to probate." *Atkinson v. Firuccia*, 567 S.W.3d 190, 194 (Mo. App. W.D. 2018) (quoting § 473.050.1, RSMo 2016). "Any interested person who 'contests the validity of a probated will[] or

**8**

prays to have a will probated which has been rejected by the probate division' must do so before the circuit court within six months of the will's admission or rejection (or 'the first publication of notice of granting of letters on the estate of the decedent, whichever is later')." *Id.* (quoting § 473.083.1, RSMo 2016). "A will contest must be exercised in strict compliance with the statutory provisions." *Id.* (internal quotes and citation omitted). "The petition and answers thereto 'frame the issues of intestacy or testacy or which writing or writings constitute he decedent's will.'" *Id.* (quoting § 473.083.7). "The circuit court's judgment 'shall determine the issues…[and] is final[.]'" *Id.* (quoting § 473.083.7).

As of January 14, 2023, the end of the six-month period following the first publication of the notice of letters testamentary granted, no other will of Decedent was presented to probate, and no petition was filed contesting the validity of the Will admitted to probate. The Will is, therefore, binding and controlling for the purposes of administering Decedent's estate, and any assets subject to probate would be administered pursuant to the Will. Based on the language of the Will, Cary stands to receive the exact same distribution of assets whether the Trust is invalidated or not.

Next, Cary argues that the trial court's ruling that the provision of the Will incorporating the terms of the Trust controlled distribution of Decedent's estate even if the Trust were invalidated was against public policy. Specifically, he asserts that the ruling would lead to an unconscionable and repugnant scenario where Terry could be guilty of undue influence in procuring an uneven distribution under the Trust, avoid

**9**

accountability, and still reap the benefits of his wrongful conduct. Cary argues that the terms of the Trust and the Will are required to be construed together to avoid repugnancy in their provisions and that a ruling that invalidates and voids a trust by reason of undue influence or fraud would also invalidate and void those provisions to the extent they are incorporated into a pour-over will.

Cary is correct that where a trust and will form parts of the same estate plan, "the documents must be construed together." *Lehr v. Collier*, 909 S.W.2d 717, 723 (Mo. App. S.D. 1995). His argument, however, ignores the fact that he only contested the Trust and not the Will. "Once a will is admitted to probate it becomes binding and cannot be collaterally attacked." *Brandin v. Brandin*, 918 S.W.2d 835, 839 (Mo. App. E.D. 1996) (citing § 473.083.1). As discussed above, any interested party has six months from the date letters testamentary have been granted to file a petition to contest a will. *Atkinson*, 567 S.W.3d at 194; *Brandin*, 918 S.W.2d at 841; § 473.083.1. "Missouri courts have consistently rejected attempts by plaintiffs to bring various causes of action that were, in reality, attempts to circumvent the validity of a probated will." *Brandin*, 918 S.W.2d at 839 (citing example cases).

Nobody, including Cary, filed a petition to contest the Will admitted to probate, and the Will became binding. Cary's argument that invalidation of the Trust would also result in invalidation of the trust provisions in the Will is an attempt to circumvent the validity of the terms of the probated Will. It is a collateral attack on the binding, probated Will, which cannot be maintained. *See Brandin*, 918 S.W.2d at 841 (whether

**10**

contesting a trust or through a tortious interference with an inheritance expectancy claim, a will contest was also necessary where children alleged that decedent's second wife unduly influenced decedent to execute amendment to antenuptial agreement, pour-over will, and trust; children's allegation concerning the will was an attempt to invalidate its effect and a collateral attack on the binding, probated will).

The trial court did not err in ruling that Cary would not derive any benefit from the invalidation of the Trust and thus lacked standing in this trust contest. It did not err in entering summary judgment in favor of Defendants and dismissing Cary's petition.

Points one and two are denied.

## Conclusion

The judgment is affirmed.

_____
Thomas N. Chapman, Judge


All concur.

11